403 So.2d 371 (1981)
Daniel Morris THOMAS, Appellant,
v.
STATE of Florida, Respondent.
No. 51927.
Supreme Court of Florida.
July 16, 1981.
Rehearing Denied October 2, 1981.
*372 Larry Mark Polsky, Daytona Beach, for appellant.
Jim Smith, Atty. Gen., and Wallace E. Allbritton, Asst. Atty. Gen., Tallahassee, for respondent.
PER CURIAM.
Appellant, Daniel Morris Thomas, was convicted of seven felony charges based upon a single, although somewhat extended, criminal episode. One of the convictions is for murder in the first degree, for which crime the trial court sentenced appellant to death. This Court has jurisdiction of his appeal. Art. V, § 3(b)(1), Fla. Const.
Appellant presents six points on appeal. We find that two of these points  the limitation on the number of peremptory challenges and the trial court's refusal to excuse for cause a juror who admittedly could *373 not follow the statutory capital sentencing requirements  require reversal of the convictions and a new trial.
The evidence, in brief, showed that appellant and another man broke into a house near DeLand while the occupants were out. Upon the return of the family, the two men shot and killed the husband, kidnapped and raped the wife, finally binding her wrists and ankles and throwing her into the St. Johns River from a bridge. Fortunately, the wife, although seriously injured, survived and testified at the highly publicized trial.
At a pretrial conference on May 18, 1977, the record indicates that defense counsel and the state stipulated to a total of sixty-six peremptory challenges for each side, which was a figure suggested by the state as the required number under the rules of criminal procedure. As a result of this stipulation, the appellant agreed not to move for severance of the consolidated offenses. The total number of peremptory challenges agreed to represented ten challenges for the capital felony and for each life felony and six for a second-degree felony. This number is not legally required by Florida Rule of Criminal Procedure 3.350, which provides that if the indictment contains two or more counts, the defendant is allowed the number of challenges permissible in a single case "but in the interest of justice the judge may use his judicial discretion ... to grant additional challenges... ." See Johnson v. State, 222 So.2d 191 (Fla. 1969). However, the stipulation was accepted by the then-presiding judge. The transcript of the pretrial conference shows the following exchange:
MR. POLSKY [defense attorney]: Very good, Your Honor.
Next, Your Honor, we'd bring up the matter of peremptory challenges for this trial.
I believe, Your Honor, that this cause would require, and the notoriety of this case, which Mr. Bevis himself characterizes as perhaps the most notorious case in Volusia County history, and the pre-trial publicity, the magnitude of the pre-trial publicity, would require a greater than statutorily warranted amount of peremptory challenges in this case, Your Honor, and I would ask on behalf of the defendant, Daniel Thomas, that the defense be allowed 50 peremptory challenges.
THE COURT: How many?
MR. POLSKY: 50, Your Honor.
MR. BEVIS: Your Honor, if the cases are consolidated for trial, which it was earlier stipulated informally that they would be, by rule the defendant would have 66.
MR. POLSKY: I don't believe  well, of course, 66 would be agreeable to the defense, Your Honor.
MR. BEVIS: There are five counts of life felony in 76-652 and one second degree felony. That would be ten for each felony punishable by life and six for the second degree, that would be 56, plus ten for the capital felony in the Indictment in 76-494, would be 66, and, of course, a like number would be for the State under the rule, Your Honor. So I think that should be certainly sufficient.
THE COURT: More than sufficient.
MR. POLSKY: Your Honor, both the defense and the State has 66 peremptory challenges apiece for the cases as they are consolidated in toto?
THE COURT: If your stipulation is still binding, then it will be 66.

MR. POLSKY: The stipulation is still binding.
MR. BEVIS: I have it prepared if you want to sign it with the Judge's order right now.
MR. POLSKY: Your Honor, I am signing the stipulation to consolidate.
THE COURT: All right, sir.
MR. BEVIS: Your Honor, it contains an order down below for the Court's consideration.
THE COURT: Fine. Thank you, gentlemen. That will solve a few time problems.
Transcript of Proceedings, Record on Appeal, vol. III, at 8-10 (emphasis ours).
*374 At trial a different judge presided instead of the judge who had presided at the pre-trial conference. When the jury venire had been sworn and the selection of the jury was about to begin, the following exchange took place:
THE COURT: It has occurred to the Court that in a chamber's conference the number of challenges was discussed, but we did not have it of record. As these are consolidated cases, the Court will allow ten for the capital offense and six for the multi-count information, for a total of sixteen challenges to both the State and the defendant.
MR. POLSKY: Your Honor, at this time I have a move for a mistrial or in the alternative, for a continuation, based upon the fact that at the pretrial conference at this cause on Wednesday, May 18th, 1977 at 1:30, before Judge Durden, I asked for fifty peremptory challenges due to the extensive pretrial publicity of this case and due to the fact that the Judge denied my motion for change of venue. At that time Mr. Bevis, State Attorney, stated that he believed that sixty-six was the correct number of peremptory challenges and Judge Durden said that sixty-six would be the amount of peremptory challenges I would have. This fact was later reiterated because I wanted it made clear by Judge Durden, for the record at the pretrial that I would have sixty-six peremptory challenges, and he so agreed.
In any event, due to the extensive pre-trial publicity of this cause I believe sixteen is a highly unfair number of peremptory challenges for me to have and especially since venue change has been denied by Judge Durden.
THE COURT: Mr. Bevis?
MR. BEVIS: Nothing further to offer, Your Honor.
THE COURT: All right, we will stand at sixteen, unless something should arise through the course of the trial, but in a review of the record and file therein there is no court order to this effect and I am now ordering the sixteen.
Transcript of Proceedings, Record on Appeal, vol. V, at 12-13.
Sixteen peremptory challenges would have been proper if the state had not concluded that sixty-six was the correct number and stipulated to that number; the record indicates the appellant would have been satisfied with fifty. Moreover, the record is also clear that appellant stipulated to the consolidation of cases in return for the stipulated sixty-six challenges. It is irrelevant whether appellant would have succeeded in any attempt to oppose consolidation of cases. Under these circumstances, where the state induces a waiver of appellant's right to oppose consolidation by agreeing to a specific number of additional peremptory challenges, the subsequent reduction of the number of challenges on this record was reversible error and clearly prejudicial.
The record establishes without question that the limitation of sixteen peremptory challenges actually prejudiced appellant, since he was unable to peremptorily challenge venireman Lionel Roberts, who was seated on the jury and became its foreman. Appellant moved four times to excuse Roberts for cause, and while three of the attempts stem from exchanges that merely show Roberts as a likely target for a peremptory challenge, the following exchange reveals error in not excusing for cause:
VOIR DIRE EXAMINATION
MR. POLSKY: Mr. Roberts?
PROSPECTIVE JUROR TWO: Yes.
MR. POLSKY: If the guilt of Daniel Thomas was proved to you beyond and to the exclusion of every reasonable doubt would you then feel it incumbent upon yourself to bring back a verdict calling for the death penalty?
PROSPECTIVE JUROR TWO: Yes.
MR. POLSKY: Could you, in any event, recommend mercy then?
PROSPECTIVE JUROR TWO: Not if I thought it was done, in my heart, that he was guilty of murder, I would say no.
MR. POLSKY: You could not recommend mercy; is that correct?

*375 PROSPECTIVE JUROR TWO: No, sir.
MR. POLSKY: In any event?
PROSPECTIVE JUROR TWO: No, sir.
MR. POLSKY: I would ask that Mr. Roberts be excused for cause, Your Honor.
THE COURT: Mr. Bevis?
MR. BEVIS: A couple of voir dire questions, Your Honor.
THE COURT: Yes, sir.
THEREUPON
VOIR DIRE EXAMINATION
MR. BEVIS: Mr. Roberts, did you hear the Judge when he was explaining about the two parts of a murder trial?
PROSPECTIVE JUROR TWO: Not too well because I was sitting at the furthest end on the other side of the room.
MR. BEVIS: Well, basically in a murder trial which is a capital crime under the laws of this State there are two separate proceedings, one to determine guilt or innocence and then, in the event of a conviction, another separate hearing or trial to determine whether or not the jury should recommend mercy or the death penalty.
PROSPECTIVE JUROR TWO: Yes.
MR. BEVIS: If the jury recommends mercy then the defendant would be sentenced to life imprisonment.
The Judge was explaining to you that he will instruct you on several of what we call in the law, aggravating circumstances, that you may consider and several mitigating circumstances that you may consider in arriving at your conclusions as to whether or not the death penalty should be imposed.
Now, are you telling us here today that you would not consider this instruction of the law, that you would feel incumbent to impose the death penalty or would you follow the law and consider each of these criteria and make up your mind based on the evidence and the law?
PROSPECTIVE JUROR TWO: I would make up my mind based on the evidence of the law, but I still say if a person was found guilty I wouldn't recommend any mercy.
MR. BEVIS: Under any circumstances?
PROSPECTIVE JUROR TWO: No, sir.
MR. BEVIS: The state objects to the challenge for cause.
THE COURT: I do not believe this is for cause. You may proceed further.
MR. POLSKY: Your Honor, I think I should make a legal argument for the sake of the record.
If the State can challenge a juror who cannot, under any circumstances 
THE COURT: I have ruled. I don't need any argument.
I overruled the challenge for cause.
MR. POLSKY: Excuse me, Your Honor?
THE COURT: I don't need any argument. I want you to continue your voir dire of the jury panel.
MR. POLSKY: Your Honor, I feel incumbent to make some type of record.
THE COURT: I don't care to hear it, sir. I have ruled. The challenge for cause is not for cause.
Transcript of Proceedings, vol. VI, at 333-37.
We find that the trial court erred in denying the challenge for cause to juror Roberts, who had admitted in voir dire that he could not "recommend any mercy" in any required sentencing phase under any circumstances. Juror Roberts should have been excused because of a fundamental violation  the presence of bias against the defendant in the sentencing aspect of a capital case. This bias violated the express requirements in the sixth amendment to the United States Constitution and in article I, section 16, of the Florida Constitution, that an accused be tried by "an impartial jury."
Federal courts have considered this precise question at least twice, and on both occasions have found that jurors with predispositions *376 concerning sentencing in capital cases should have been excused. See Stroud v. United States, 251 U.S. 15, 40 S.Ct. 50, 64 L.Ed. 103 (1919), reh. denied, 251 U.S. 380, 40 S.Ct. 176, 64 L.Ed. 317 (1920); Crawford v. Bounds, 395 F.2d 297, 304 (4th Cir.1968), cert. denied, 397 U.S. 936, 90 S.Ct. 941, 25 L.Ed.2d 117 (1970).
Although the jury's role in the sentencing phase is an advisory one, it is significant to a defendant since a trial court may not impose the death penalty following a jury's advisory sentence of life imprisonment unless "the facts suggesting a sentence of death [are] so clear and convincing that virtually no reasonable person could differ." Tedder v. State, 322 So.2d 908, 910 (Fla. 1975). We have previously held that it was error for a trial judge to refuse to allow defense counsel to propound any voir dire inquiry as to the issue of mercy, since "[s]uch inquiry ... could conceivably be determinative of whether the defense should challenge a juror  either for cause or peremptorily." Poole v. State, 194 So.2d 903, 905 (Fla. 1967) (emphasis supplied). The admitted refusal of juror Roberts to weigh mitigating circumstances in the sentencing phase presents a clear case in which a challenge for cause should have been granted.
Having determined that the trial court erred in not excusing juror Roberts, we reach the difficult question of whether this error permeates the convictions themselves, thus requiring a new trial, or affects simply the capital sentencing phase.
We conclude on this record that the combination of the two errors  (1) limiting appellant's peremptory challenges to sixteen after entry of a stipulation with the state for sixty-six, and (2) refusing to excuse juror Roberts for cause  also prejudiced appellant in the trial phase. These two errors resulted in appellant's multiple efforts to have juror Roberts excused, which in turn created a great risk of animosity against the appellant by juror Roberts and possibly by his fellow jurors. For these reasons we determine that the convictions must be reversed, and this cause is remanded for a new trial.
It is so ordered.
SUNDBERG, C.J., and OVERTON, ENGLAND and McDONALD, JJ., concur.
ALDERMAN, J., concurs in part and dissents in part with an opinion, in which BOYD, J., concurs.
ADKINS, J., dissents.
ALDERMAN, Justice, concurring in part, dissenting in part.
I agree that the trial court erred in not excusing juror Roberts for cause. A defendant in a capital case is entitled to twelve impartial jurors, none of whom is unequivocably predisposed to returning a sentence of death as juror Roberts was in the present case. As the Supreme Court of the United States said in Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968): "Whatever else might be said of capital punishment, it is at least clear that its imposition by a hanging jury cannot be squared with the Constitution." 391 U.S. at 523, 88 S.Ct. at 1778.
The trial court's failure to excuse juror Roberts for cause, however, requires only that the death sentence be vacated and the cause be remanded for a new sentencing hearing before a new jury. Juror Roberts made it plain that he would follow the law in deciding the guilt or innocence of the defendant. In Witherspoon, the Supreme Court stated that it was not announcing a per se rule requiring reversal of a conviction where the jury was organized to return a verdict of death because it could not conclude that the exclusion of jurors opposed to capital punishment results in an unrepresentative jury on the issue of guilt or substantially increases the risk of conviction. It does not appear from the record in this case that the defendant's multiple efforts to have juror Roberts excused created any animosity against him on the part of juror Roberts and the other members of the jury or in any way affected their verdict on the issue of guilt or innocence.
*377 Accordingly, I concur with the majority's reversal of the death sentence, but I dissent from the majority's reversal of the defendant's conviction. I would affirm the conviction, vacate the death sentence, and remand for a new sentencing hearing before a newly impaneled jury.
BOYD, J., concurs.