475 So.2d 1205 (1985)
David Alan GORE, Appellant,
v.
STATE of Florida, Appellee.
No. 65201.
Supreme Court of Florida.
August 22, 1985.
Rehearing Denied October 21, 1985.
*1206 Richard Saliba of Saliba & McDonough, Vero Beach, for appellant.
Jim Smith, Atty. Gen., Gregory C. Smith and Robert S. Jaegers, Asst. Attys. Gen., West Palm Beach, for appellee.
ALDERMAN, Justice.
David Alan Gore appeals his convictions for murder in the first degree, two counts of kidnapping, and three counts of sexual battery, and his sentence of death. Finding no reversible error, we affirm his convictions and his death sentence.
Gore and his cousin picked up fourteen-year-old Regan Martin and seventeen-year-old Lynn Elliott who were hitchhiking to the beach. After the glove compartment in the pickup truck fell open and a gun became visible, Gore took the gun and held it to Regan's head. He grabbed the two girls' wrists and held them together. Gore then said that they should take the girls to Gore's home. He told the girls that if they said or did anything, they would be killed. When they arrived at his home, the girls were handcuffed and taken into a bedroom. The girls then were separated, and Lynn was tied up while Regan was handcuffed. Gore cut Regan's clothes off of her and sexually assaulted her on three separate occasions. Regan testified that she heard noises in the other room after Gore had left her. She heard Gore tell Lynn to shut up or he would kill her. Gore also told Regan to be quiet or he would slit her throat and that he would do it anyway. Gore then put Regan in the closet, and, after he left, she heard two or three shots. Gore then came back into the room and put Regan in the attic where she stayed until rescued by a police officer.
Michael Rock, a fifteen-year-old boy, testified that on July 26, 1983, while riding his bicycle in the area of Gore's home, he heard screaming and observed a naked girl running down the driveway being chased by Gore who was also naked. He saw Gore catch up to her, drag her back to a palm tree, and shoot her twice in the head. Rock went home and told his mother, and she called the police. The police arrived and surrounded Gore's home. Lynn's body was found in the trunk of the car in the driveway. Her arms and legs had been tightly bound with rope. She had multiple abrasions on her body consistent with falling and being dragged. The gun used to kill her was found in Gore's home.
Gore was indicted for the first-degree, premeditated murder of Lynn Elliott, for the kidnapping of Lynn Elliott, for the kidnapping of Regan Martin, and for three counts of sexual battery of Regan Martin. He was found guilty of all six counts. After a jury recommendation of death, the trial court imposed the death sentence for the first-degree murder of Lynn Elliott and imposed life sentences for the other crimes.
Gore challenges his convictions on a multitude of grounds. He initially contends that the court reversibly erred in not permitting him to inquire of the various jurors as to their feelings, attitudes, or prejudices regarding a recommendation of mercy. The trial court sustained the state's objection to the following question posed by defense counsel during voir dire: "Concerning the death penalty, is there someone here that feels so strongly in favor of the death penalty that you would never under any circumstances be able to recommend *1207 mercy in a case in which the defendant was convicted of first-degree murder?" After the state's objection that there is nothing in the statute that says anything about mercy, the following colloquy between counsel and the trial court transpired:
THE COURT: Of course, what we're doing here, gentlemen, with all due respect, we're getting into the lawyers making comments on what the law is. As I understand it, the jury, their function, first of all, is to determine innocence or guilt as to the first count... .
... .
MR. STONE: It bothers me, the word. That's under the old statute, whether you recommend mercy. It has nothing to do with this case.
MR. LONG: Your Honor, a juror can recommend 
THE COURT: I'll permit you  I'm going to permit you to ask this jury would they under no circumstances because they've got such a conviction of the death penalty, they cannot render an advisory opinion back to this Court with reference to life imprisonment not to exceed twenty-five years.
MR. STONE: But the use of the word mercy, that no longer exists. That has nothing to do with the statute whatsoever.
THE COURT: If they're so strong in their belief at this point. Mercy is not involved.
... .
THE COURT: The objection is sustained as not a valid instruction to the law.
Citing Poole v. State, 194 So.2d 903 (Fla. 1967), and Thomas v. State, 403 So.2d 371 (Fla. 1981), Gore argues that he was denied the opportunity to ascertain whether the jurors were prejudiced and was thereby denied his right to a fair and impartial jury. In Thomas v. State, we addressed the issue of whether a juror who admitted in voir dire that he could not recommend any mercy in any required sentencing phase under any circumstances should have been excused for cause at the defendant's request. We held that the juror should have been excused for cause because of a fundamental violation which was the actual presence of expressed bias against the defendant in the sentencing phase of his capital trial. In Thomas, reiterating what we had formerly said in Poole, we held:
Although the jury's role in the sentencing phase is an advisory one, it is significant to a defendant since a trial court may not impose the death penalty following a jury's advisory sentence of life imprisonment unless "the facts suggesting a sentence of death [are] so clear and convincing that virtually no reasonable person could differ." Tedder v. State, 322 So.2d 908, 910 (Fla. 1975). We have previously held that it was error for a trial judge to refuse to allow defense counsel to propound any voir dire inquiry as to the issue of mercy, since "[s]uch inquiry ... could conceivably be determinative of whether the defense should challenge a juror  either for cause or peremptorily." Poole v. State, 194 So.2d 903, 905 (Fla. 1967) (emphasis supplied). The admitted refusal of juror Roberts to weigh mitigating circumstances in the sentencing phase presents a clear case in which a challenge for cause should have been granted.
403 So.2d at 376.
In the present case, however, unlike Thomas, juror bias and prejudice do not appear from the record before us. Although the trial court should have allowed Gore to propound questions to the jury as to their bias or prejudice in recommending a life sentence, we hold that the voir dire of the jurors read in its entirety evidences that this error does not amount to reversible error, but rather was harmless error beyond a reasonable doubt. The jury was thoroughly questioned in regard to their attitudes toward the death penalty and whether they felt it should be automatically imposed or whether they would follow the court's instructions and make sure the circumstances were proved to support it before they would consider it. Gore has not shown that his jury was made up of *1208 one or more persons unalterably in favor of the death penalty or that any of the juror's views would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath. In our recent decision of Fitzpatrick v. State, 437 So.2d 1072 (Fla. 1983), cert. denied, ___ U.S. ___, 104 S.Ct. 1328, 79 L.Ed.2d 723 (1984), we found that Fitzpatrick was unlike Thomas because
none of the four veniremen ever indicated that he was unalterably opposed to recommending life sentences for convicted murderers. Their statements only indicated a tendency toward being in favor of the death penalty. "A man who opposes the death penalty, no less than the one who favors it, can make the discretionary judgment entrusted to him by the State and can thus obey the oath he takes as a juror." . .. A judge need not excuse such a person unless he or she is irrevocably committed to voting for the death penalty if the defendant is found guilty of murder and is therefore unable to follow the judge's instructions to weigh the aggravating circumstances against the mitigating circumstances.
437 So.2d at 1075-76. We hold that the trial court did not reversibly err in sustaining the state's objection.
We find no merit to Gore's claim that the trial court erred in denying his motion to suppress his confession. The record supports the trial court's specific ruling that Gore intelligently and voluntarily waived his right to counsel and expressed his wish to proceed without counsel to give the subject confession. In denying this motion, the trial court explained:
And the evidence is that he was an auxiliary police officer. That he had education, experience with reference to arrest et cetera. Whether or not he made an intelligent waiver of his right to counsel during his statement, in the court's opinion he was given Miranda at the Indian River County Jail, and he stated that he did wish to proceed without a lawyer and did proceed and did intelligently answer the questions. And it was only after some more incriminating statements were beginning to be asked that he at that time asked for counsel and stated I believe he did not want to proceed further without counsel and the interrogation did, of course, cease. So, the motion to suppress the statement will be denied, and it'd be admitted during the course of the trial.
Then after more discussion regarding the trial court's ruling, the court, to make its finding perfectly clear, stated: "Well, let me make my ruling specific so there'd be no misunderstanding of what I'm doing. I'm stating that there was an intelligent waiver of the right of counsel, intelligently done at the Indian River County Jail wherein Mr. Gore specifically stated after Miranda that he wished to proceed without counsel." Gore's statement that he wanted to get something off his chest and then he wanted to see a lawyer was not confusing and in need of further clarification. See Cannady v. State, 427 So.2d 723 (Fla. 1983). He indicated unequivocally that he wanted to talk to the police authorities and that after getting something off his chest, he then wanted to speak to a lawyer.
We reject Gore's contention that the trial court reversibly erred in allowing into evidence two prejudicial photographs, one depicting the victim in the trunk of Gore's mother's car and the other showing the hands of the victim behind her back. The test of admissibility of photographs such as these objected to by Gore is relevancy and not necessity. These photographs met the test of relevancy and were not so shocking in nature as to defeat their relevancy. Bush v. State, 461 So.2d 936 (Fla. 1984); State v. Wright, 265 So.2d 361 (Fla. 1972). These photographs placed the victim in Gore's mother's car, showed the condition of the body when first discovered by the police, and showed the considerable pain inflicted by Gore in binding the victim.
Gore also argues that the trial court should have granted his request for a mistrial due to an epileptic juror's interruption of defense counsel during closing argument. Defense counsel told the court *1209 that he had heard this juror who suffered a slight attack during trial say two or three times, "goddamn you, (laughing)." After the seizure, the jury was immediately taken from the courtroom, and the juror was given medical attention. The trial court denied Gore's motion for mistrial, substituted an alternate juror in place of the excused epileptic juror, and gave the following explanation and curative instruction to the jury:
THE COURT: Ladies and gentlemen of the jury, we are concerned about Mr. Brown's health. Under the circumstances I am excusing Mr. Brown so that he can go about his own personal affairs and I believe we do have someone in attendance with him.
... .
Ladies and gentlemen, any outburst that Mr. Brown made or may not have made  I did not hear  but I want to state to you, as I've stated to you from the very beginning, this case must be tried solely on the evidence and on the law and nothing else.
... .
Can each of you assure me that you will make your decision in this case solely on the law and nothing else?
Is there anything that Mr. Brown has stated that would in any way influence this jury and carry any comments he may or may not have said into the jury room?
All right. We're sorry for the interruption of the defense's argument. Mr. Phillips, you may proceed.
We find that the trial court's curative instruction was adequate. Whether substantial justice requires the granting of a mistrial is a determination within the sound discretion of the trial court, and the dealing with the conduct of jurors is also left to the discretion of the trial court. Doyle v. State, 460 So.2d 353 (Fla. 1984). In the present case, we find no abuse of discretion.
We further reject Gore's contention that the court reversibly erred in disallowing Gore's request for a demonstration in downtown St. Petersburg of the distance of 356 feet, erred in precluding certain testimony of Detective Pisani, erred in denying a mistrial due to certain comments and conduct of the prosecutor, erred in denying a mistrial upon Gore's motion relating to Detective Kheun's testimony, erred in restricting his voir dire of the jury relating to his cousin's involvement, and erred in denying his motion for judgment of acquittal or motion for new trial. We also reject as without merit Gore's challenge to the jury selection process. See Lara v. State, 464 So.2d 1173 (Fla. 1985); Maggard v. State, 399 So.2d 973 (Fla.), cert. denied, 454 U.S. 1059, 102 S.Ct. 610, 70 L.Ed.2d 598 (1981).
In addition to reviewing the record in light of the errors asserted by Gore, we have reviewed the evidence pursuant to Florida Rule of Appellate Procedure 9.140(f), and we conclude that no new trial is required. Finding no reversible error, we affirm his conviction.
Gore also challenges his sentence of death on a multitude of grounds. The jury recommended the death sentence, and the trial court entered the death sentence, finding as aggravating circumstances that the murder was committed while Gore was under sentence of imprisonment because he was on parole; that the murder was committed while Gore was engaged in the commission of two kidnappings and three sexual batteries; that the murder was committed for the purpose of avoiding or preventing a lawful arrest; that this murder was especially wicked, evil, atrocious, or cruel; and that this murder was committed in a cold, calculated, and premeditated manner without any pretense of moral or legal justification. The trial court found none of the statutory mitigating circumstances to be applicable. It also considered "any other aspect of Gore's character or record" or any circumstances of the offense and found that no circumstance of the offense could in any way act in mitigation. Insofar as concerns "any other aspect of Gore's character or record," the trial court found that Gore was affectionate and considerate to his family members; that a minister testified *1210 that he was a "born again" Christian since his arrest for murder; that he was not a deprived child and was not rejected by his family; that, on the contrary, he was given all the love and attention any parent could give a child; and that, based on all the evidence, the mitigating circumstance relative to "any aspect of Gore's character or record" does apply. The court concluded that sufficient aggravating circumstances exist to warrant imposition of the death penalty upon Gore and that there are insufficient mitigating circumstances to outweigh the aggravating circumstances.
Constitutional challenges to Florida's death penalty statute identical to those now being made by Gore have been previously rejected by this Court.
Gore's argument that he is entitled to a statement of aggravating circumstances prior to trial is without merit. We have repeatedly rejected this claim. In Hitchcock v. State, 413 So.2d 741 (Fla.), cert. denied, 459 U.S. 960, 103 S.Ct. 274, 74 L.Ed.2d 213 (1982), we explained that the death penalty statute sets out the aggravating factors to be considered in determining whether the death sentence should be imposed and that this statute limits consideration to the statutory factors listed. Therefore, we concluded, there is no reason to require the state to notify defendants of the aggravating factors that the state intends to prove.
The trial court did not err in instructing the jury during the penalty phase. It did not erroneously restrict Gore's closing argument during the penalty phase. Gore's arguments that the court erred in not directing a verdict of life and that Enmund v. Florida, 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982), applies and precludes the imposition of the death penalty in this case are also completely without merit.
He also contends that the aggravating circumstances that the murder was committed to prevent a lawful arrest and that the murder was heinous, atrocious, or cruel were not proven beyond a reasonable doubt. We disagree and hold that these circumstances were established by the evidence beyond a reasonable doubt. With regard to its finding of the existence of these circumstances, the trial court accurately explained:

The crime for which the Defendant is to be sentenced was committed for the purpose of avoiding or preventing a lawful arrest or effecting an escape from custody. This aggravating circumstance does apply in this case and therefore was considered by the Court regarding imposition of sentence because the evidence shows conclusively that the dominant or only motive for the Defendant murdering one of the victims who was in the process of escaping was to prevent her identification of him as the perpetrator of the kidnapping and to thereby avoid or prevent the Defendant's arrest.
... .

The crime for which the Defendant is to be sentenced was especially wicked, evil, atrocious or cruel. This aggravating circumstance does apply in this case and therefore was considered by the Court regarding imposition of sentence based upon the following evidence: The homicide victim was a seventeen year old girl who was hitchhiking along with her younger friend, another schoolgirl. After the Defendant and his cousin offered the two girls a ride, the Defendant pulled a gun on them and repeatedly threatened to kill the homicide victim when she started crying. The homicide victim and her friend were subsequently handcuffed together while enroute to the Defendant's residence. Upon arrival at the residence, the handcuffs were removed from the girls and the homicide victim was hog-tied so tightly that a welt formed on one of her limbs. While the homicide victim was inside the residence, the Defendant committed a sexual battery upon her between the intervals he committed three sexual batteries upon her friend. When the homicide victim managed to escape from the residence, the Defendant pursued her, firing his gun. After she fell on the ground, the Defendant *1211 grabbed her and began pulling her back towards the residence. The Defendant then shot her twice in the head, killing her. The horror and terror experienced by the homicide victim and the torture and pain inflicted upon her prior to her death places this murder case outside the norm of first-degree murder cases.
We also reject Gore's claim that the evidence does not support the trial court's finding that this murder was cold, calculated, and premeditated without any pretense of moral or legal justification. The facts of this case are sufficient to show the heightened premeditation required for the application of this aggravating circumstance. We find no merit to Gore's other challenges to his death sentence.
Accordingly, finding no reversible error and that the death penalty is proportionately warranted under the circumstances, we affirm Gore's convictions and the imposition of the death sentence.
It is so ordered.
BOYD, C.J., and ADKINS, OVERTON, McDONALD, EHRLICH and SHAW, JJ., concur.