479 So.2d 731 (1985)
Ottis Elwood TOOLE, Appellant/Cross-Appellee,
v.
STATE of Florida, Appellee/Cross-Appellant.
No. 65378.
Supreme Court of Florida.
November 25, 1985.
*732 Michael E. Allen, Public Defender and Paula S. Saunders, Asst. Public Defender, Second Judicial Circuit, Tallahassee, for appellant/cross-appellee.
Jim Smith, Atty. Gen. and Raymond L. Marky, Asst. Atty. Gen., Tallahassee, for appellee/cross-appellant.
PER CURIAM.
This case is before us on appeal of a conviction of first-degree murder and sentence of death. We have jurisdiction pursuant to article V, section 3(b)(1), Florida Constitution.
On January 4, 1982, a boarding house burned down in Jacksonville. George Sonnenberg, one of the residents, died from injuries caused by the fire. Appellant at that time worked as a handyman for the owner of the boarding house. Based on test results showing the presence of volatile hydrocarbons, the acting fire marshal's opinion was that the fire was set deliberately.
While incarcerated at Lake Butler for an unrelated offense, appellant was questioned regarding the fire. He confessed to setting the fire, but stated that he had not known Sonnenberg was in the building when he started the fire. In a subsequent statement appellant reaffirmed that he had started the fire and said that he had had a homosexual relationship with Sonnenberg and that they had argued. After starting the fire, appellant stated that he walked across the street and masturbated twice. Both of these statements were admitted at trial.
Appellant, on direct examination, denied setting the fire and claimed that he signed the statement so he could return to Jacksonville. He and his wife testified that he spent most of January 4, 1982, at home working on the kitchen sink. He admitted on cross examination that he knew the victim, but he denied having any special relationship with him.
The jury found appellant guilty of felony murder, rather than premeditated murder as charged, and recommended a death sentence. The trial court imposed sentence accordingly, finding two statutory aggravating factors and one nonstatutory mitigating factor.
Appellant argues that the trial court erred in allowing testimony that he was a homosexual who had a relationship with the victim. He claims that his relationship with the victim was not relevant to prove any material issue and that there is no evidence that the argument was a lovers' quarrel. He argues that the prejudicial impact of evidence of his homosexuality substantially outweighed any probative value. We find no reversible error. The fact that appellant knew the victim and had argued with him was relevant to prove motive, irrespective of whether the argument was a "lovers' quarrel"; any potential prejudicial impact on the issue of premeditation did not materialize in light of the specific verdict of felony murder. We find that the probative value of this evidence outweighed any potential prejudicial impact on appellant's trial.
Appellant next argues that the trial court erred in allowing the state to cross-examine him regarding his incarceration at Lake Butler and a previous "arson" committed when he was ten years old, in violation *733 of the Williams rule.[1] He claims the questioning regarding Lake Butler was calculated to discredit him by showing that he was a previously convicted felon sentenced to prison who was trying to withhold information about his situation. The point was not preserved in either instance. We find no reversible error. Moreover, it was appellant who first mentioned burning the house as a child in an effort to explain his previous testimony that he did not set the fire in the present case. He cannot complain that the prosecutor asked him the circumstances surrounding the incident.
Appellant raises no additional issues regarding the guilt phase of his trial. We have carefully reviewed the entire record and find no reversible error.
Regarding his death sentence, appellant argues that it is unconstitutionally founded on an automatic aggravating circumstance in that the aggravating circumstance that the capital felony occurred during the commission of a felony, here arson, takes into account the underlying felony. We have previously rejected this claim. Squires v. State, 450 So.2d 208 (Fla.), cert. denied, ___ U.S. ___, 105 S.Ct. 268, 83 L.Ed.2d 204 (1984); Clark v. State, 443 So.2d 973 (Fla. 1983), cert. denied, ___ U.S. ___, 104 S.Ct. 2400, 81 L.Ed.2d 356 (1984); White v. State, 403 So.2d 331 (Fla. 1981), cert. denied, 463 U.S. 1229, 103 S.Ct. 3571, 77 L.Ed.2d 1412 (1983).
Appellant also argues that his death sentence is unconstitutionally founded upon an improper doubling of the aggravating circumstances of creating a great risk of death to many persons and committing the capital felony while engaged in the commission of an arson. This argument is without merit. Although arson may, as in this instance, involve a great risk of death to many persons, this aggravating factor is dependent upon proof adduced at trial and is not necessarily encompassed by the felony of arson. By contrast, every robbery necessarily involves pecuniary gain, so that when these two factors are both found there is an improper doubling. See, e.g., Oats v. State, 446 So.2d 90 (Fla. 1984); White v. State, 446 So.2d 1031 (Fla. 1984); Maxwell v. State, 443 So.2d 967 (Fla. 1983). We find no error on this point.
Appellant argues that the trial court erred in failing to instruct the jury on the statutory mitigating factors of section 921.141(6)(b), Florida Statutes (1981), the capital felony was committed while the defendant was under the influence of extreme mental or emotional disturbance, and section 921.141(6)(e), the defendant acted under extreme duress or under substantial domination of another person. The state counters that appellant has not preserved the issue because counsel did not object either at the charge conference or at the conclusion of the charge to the jury. We disagree that the issue was not preserved. The contemporaneous objection rule is satisfied when, as here, the record shows that there was a request for an instruction, that the trial court understood the request, and that the trial court denied the specific request. Thomas v. State, 419 So.2d 634 (Fla. 1982).
The defense produced evidence that appellant suffers from pyromania, the overwhelming impulse to set fire; he is in the borderline retarded category of intelligence; he suffers from a personality disorder; he has a lower ability to cope than most people; he usually acts on impulse; he functions at a primitive level from a psychological standpoint; he lacks the normal ability to process tension; when he has an overwhelming need to release tension, setting fires is one of the ways in which he does it; and at the time he sets the fire, he is overwhelmingly taken by the impulse. In Mines v. State, 390 So.2d 332 (Fla. 1980), cert. denied, 451 U.S. 916, 101 S.Ct. 1994, 68 L.Ed.2d 308 (1981), wherein the defendant suffered from schizophrenia, we held that subsections 921.141(6)(b) and (f) are *734 the two statutory mitigating circumstances relating to a defendant's mental condition that should be considered when there is evidence of a defective mental condition before imposing a death sentence. In the present case the trial court instructed the jury on subsection (6)(f), but not (6)(b) or (6)(e).
We find that the trial court erroneously refused the instruction on (6)(b). The above-mentioned evidence might very well suggest to the jury that appellant suffers from mental or emotional disturbance. Had the jury been properly instructed that it could consider this specific mitigating factor, it might not have recommended death. A jury recommendation of life is entitled to great weight and may not be overruled unless there was no reasonable basis for it. Richardson v. State, 437 So.2d 1091 (Fla. 1983). Appellant has been prejudiced by the trial court's refusal to give a proper instruction that might have led to a different jury recommendation.
The trial court was correct, however, as to the inapplicability of (6)(e), acting under extreme duress or under substantial domination of another person. "Duress" is often used in the vernacular to denote internal pressure, but it actually refers to external provocation such as imprisonment or the use of force or threats. See Guralnik, New World Dictionary of the American Language (2d college ed. 1974). There was no evidence that appellant acted under external provocation.
Appellant's last point is that the trial judge erred in failing to consider the mitigating factors of 6(b) and (e) in his weighing process because he erroneously thought all of the mental evidence related only to 6(f). Pursuant to our holding that an instruction on duress, 6(e), was unnecessary, we affirm as to this asserted error. We also affirm as to the trial court's consideration of the mental or emotional distress factor, 6(b). The trial court considered the evidence and found 6(b) inapplicable. It is within the province of the trial court to decide whether a particular mitigating circumstance has been proven and the weight to be given it. Daugherty v. State, 419 So.2d 1067 (Fla. 1982), cert. denied, 459 U.S. 1228, 103 S.Ct. 1236, 75 L.Ed.2d 469 (1983).
We affirm the conviction of guilt for first-degree felony murder. In accordance with the views expressed regarding the mitigating instruction on extreme mental or emotional distress, we vacate the death sentence and remand to the trial court to hold a new sentencing hearing and impanel a jury for that purpose.[2]
It is so ordered.
BOYD, C.J., and OVERTON, McDONALD and SHAW, JJ., concur.
EHRLICH, J., concurs with an opinion, in which ADKINS, J., concurs.
ADKINS, J., concurs in the conviction, but dissents from the sentence.
EHRLICH, Justice, concurring.
The Court has declined to address the issue of the refusal of the trial court to grant the state's challenge for cause of several prospective jurors because the state had not exhausted its peremptory challenges at the time the jury was sworn, and was thus not injured by the trial court's refusal. Because this issue is capable of repetition and is of considerable importance, in my opinion, I want to address it.
Several prospective jurors who acknowledged that they could not consider death as a possible penalty were challenged for cause by the state. The trial judge refused to excuse these prospective jurors because they stated that their opposition to the death penalty would not interfere with their determination of the defendant's guilt. The trial judge ruled that the jurors *735 in question would be permitted to determine the guilt issue but would be substituted by alternates to consider the death issue if the case proceeded to a penalty hearing on this issue. The problem is well described in Spinkellink v. Wainwright, 578 F.2d 582 (5th Cir.1978), cert. denied, 440 U.S. 976, 99 S.Ct. 1548, 59 L.Ed.2d 796 (1979):
Suppose, for example, that the evidence at trial proved the defendant's guilt beyond a reasonable doubt and demonstrated, within the meaning of the Florida death penalty statute, that capital punishment could be warranted. A juror who had such deeply conscience scruples against the death penalty [as to be excludable under Witherspoon v. Illinois, 391 U.S. 510 [88 S.Ct. 1770, 20 L.Ed.2d 776] (1968)] might find himself confronting a grizzly choice. If, because of his scruples, he votes to acquit, he must risk hanging the jury. Similarly motivated votes by other jurors in subsequent trials and retrials could, in effect, result in near immunity from crimes for which the death penalty can be imposed, which would frustrate Florida's interest in the just and evenhanded application of its laws, including its death penalty statute. If the juror votes to convict, he must risk betrayal of his principles should the death penalty eventually be imposed. Even under Florida's bifurcated trial procedure in these cases, the situation would be no less problematic. Although the juror could be excused from the jury during the sentencing phase of the trial, during the guilt-determination phase he still would know that a vote to convict could eventually mean the death penalty, a result to which he would have contributed, if only indirectly. His choices as to how to vote on the defendant's guilt or innocence would remain equally troublesome.
The right under the Sixth and Fourteenth Amendments to trial by a jury guarantees to the criminally accused "a fair trial by a panel of impartial, `indifferent' jurors." But the state also enjoys the right to an impartial jury, and impartiality requires not only freedom from jury bias against the accused and for the prosecution, but freedom from jury bias for the accused and against the prosecution.
Id. at 595-96 (footnote and citations deleted). The state thus risks the injustice of being denied conviction on a capital offense because of anti-death qualified jurors serving during the guilt phase of trial. I do not deem it fundamentally unfair to deny a defendant the right to have such jurors on the guilt-phase panel since the rule excluding such jurors also serves to exclude jurors during the penalty phase who are unalterably unable to vote for mercy. See, e.g., Thomas v. State, 403 So.2d 371 (Fla. 1981) (reversible error to fail to excuse for cause juror "who had admitted in voir dire that he could not `recommend any mercy' in any required sentencing phase under any circumstances." 403 So.2d at 375).
The trial judge's procedure in this case is in direct contravention of prior expressions from this Court. In Riley v. State, 366 So.2d 19 (Fla. 1978), we rejected appellant's contention that he had a right to the very procedure utilized in this case. We held that "[w]hile this suggestion is novel, we have given it full consideration and find no compulsion in law or logic to so structure trials. We reject appellant's contention that his jury was impermissibly constituted." Id. at 21 (emphasis added). In Maggard v. State, 399 So.2d 973 (Fla.), cert. denied, 454 U.S. 1059, 102 S.Ct. 610, 70 L.Ed.2d 598 (1981), we again rejected this contention, reasserting our holding in Riley, and citing to Spinkellink. We also recently again rejected the contention in Caruthers v. State, 465 So.2d 496 (Fla. 1985).
While the procedure utilized by the trial judge has some superficial appeal, it is lacking in even-handed fairness for both the defense and the state. If anti-death jurors who say they are able to render a fair and impartial verdict as to guilt are allowed to serve on guilt-phase juries, then, by the same token death qualified jurors such as the one in Thomas v. State, supra, *736 should also be included in such a special guilt-phase jury. Just as one may recoil from the thought of such death-qualified jurors serving as a serious intrusion on the right of the defendant to a fair trial, so too one should recoil from the thought of anti-death jurors serving as a serious intrusion on the right of the people and the state to a fair trial.
This Court has previously refused to embrace the procedure utilized in this trial and that should be direction enough to the trial bench that such a procedure is completely inappropriate and seriously threatens to undermine the truth-seeking scheme of Florida's death penalty statute.
I think that trial court's procedure dealing with the jurors unalterably opposed to the death penalty goes counter to prior expressions from this Court and should not be utilized by the trial bench.
ADKINS, J., concurs.
NOTES
[1] Williams v. State, 110 So.2d 654 (Fla.), cert. denied, 361 U.S. 847, 80 S.Ct. 102, 4 L.Ed.2d 86 (1959).
[2] The state's cross appeal, relating to the guilt phase of the trial, is mooted by our holding. We decline to address the issue of the refusal of the trial court to grant the state's challenge for cause of several prospective jurors, even though capable of repetition, as the state waived this issue at trial by not exhausting its peremptory challenges.