PER CURIAM.
This is a petition of David Alan Gore for a writ of habeas corpus seeking to set aside his death sentence and an appeal from the denial of a motion for postconviction relief filed pursuant to Florida Rule of Criminal Procedure 3.850. We have jurisdiction. Art. V, §§ 3(b)(1), (9), Fla. Const. In order to give adequate consideration to the issues involved, this Court stayed Gore’s impending execution. We now conclude that Gore is entitled to no relief.
Gore was convicted of the first-degree murder of Lynn Elliott, the kidnapping of Elliott, the kidnapping of Regan Martin, and three counts of the sexual battery of Regan Martin. Following a jury recommendation of death, the trial judge imposed the death sentence for the murder of Elliott and life sentences for the other crimes. This Court affirmed in Gore v. State, 475 So.2d 1205 (Fla.1985), cert. denied, 475 U.S. 1031, 106 S.Ct. 1240, 89 L.Ed.2d 348 (1986).
The crimes were described in our opinion as follows:
*1049 Gore and his cousin picked up fourteen-year-old Regan Martin and seventeen-year-old Lynn Elliott who were hitchhiking to the beach. After the glove compartment in the pickup truck fell open and a gun became visible, Gore took the gun and held it to Regan’s head. He grabbed the two girls’ wrists and held them together. Gore then said that they should take the girls to Gore’s home. He told the girls that if they said or did anything, they would be killed. When they arrived at his home, the girls were handcuffed and taken into a bedroom. The girls then were separated, and Lynn was tied up while Regan was handcuffed. Gore cut Regan’s clothes off of her and sexually assaulted her on three separate occasions. Regan testified that she heard noises in the other room after Gore had left her. She heard Gore tell Lynn to shut up or he would kill her. Gore also told Regan to be quiet or he would slit her throat and that he would do it anyway. Gore then put Re-gan in the closet, and, after he left, she heard two or three shots. Gore then came back into the room and put Regan in the attic where she stayed until rescued by a police officer.
Michael Rock, a fifteen-year-old boy, testified that on July 26, 1983, while riding his bicycle in the area of Gore’s home, he heard screaming and observed a naked girl running down the driveway being chased by Gore who was also naked. He saw Gore catch up to her, drag her back to a palm tree, and shoot her twice in the head. Rock went home and told his mother, and she called the police. The police arrived and surrounded Gore’s home. Lynn's body was found in the trunk of the car in the driveway. Her arms and legs had been tightly bound with rope. She had multiple abrasions on her body consistent with falling and being dragged. The gun used to kill her was found in Gore’s home.
Id. at 1206.
Gore raises a number of points, but we only find it necessary to discuss one of them. In both his petition and his appeal, Gore claims that because of omissions of counsel, he was deprived of the opportunity of presenting pertinent nonstatutory mitigating evidence during the penalty phase of his trial.
At the charge conference which preceded the testimony at the penalty phase, Gore’s counsel said that he planned to have Gore’s brother-in-law testify that Gore was acting strangely the weekend before the killing and that after the crime he had found a half empty bottle of vodka and some pills in Gore’s bedroom. He intended for this witness and Gore’s mother and father to say that because of the way he was acting, they believed that he was drinking. The judge deemed this irrelevant because there was no evidence that Gore was drinking while the women were in his custody, and Martin testified that he did not appear drunk. At the postconviction hearing, Gore’s father, uncle and brother-in-law testified that Gore was usually quiet, but when he drank his personality changed and he would become very talkative. The brother-in-law said that when he had had dinner with Gore the night before the murder, Gore was at first talkative but later became quiet and appeared nervous. He said that Gore did not take a drink in his presence. Gore’s uncle said that Gore seemed to be acting strangely the night before the crime.
From an examination of the record, it appears that to the extent that evidence was available concerning the possibility of drinking, Gore’s trial counsel sought to have it introduced. The trial judge sustained the state’s objection based on relevancy. Hence, trial counsel cannot be faulted for failing to present the evidence. On appeal, Gore’s appellate counsel asserted in point XVIII of the brief that the judge had erred in refusing to permit evidence concerning the possibility of drinking. While this issue is not specifically mentioned in the opinion, this Court denied all of Gore’s assertions. Hence, it is evident that neither counsel was ineffective.
In the penalty phase of the trial, Gore’s attorney also sought to have Gore’s mother testify concerning the close relationship between her son and his cousin, Freddie Wa- *1050 terfield, who accompanied Gore when they picked up Elliott and Martin on the highway. Gore’s mother was prepared to say that they had been close friends most of their lives and that because of Waterfield’s dominating personality, he had a strong influence on Gore’s conduct. The trial judge sustained the state’s objection to this testimony on grounds of relevancy. At the postconviction hearing, other relatives also testified of Waterfield’s influence upon Gore.
It is likewise clear that Gore’s trial counsel tried to introduce evidence on the subject of Waterfield’s dominance during the penalty phase but was prevented from doing so by the ruling of the trial court. Under these circumstances, there was nothing more that trial counsel could do. The state suggests that appellate counsel also asserted this ruling as error in the appeal. While it is true that there is an oblique reference to the subject in Gore’s appellate brief, it cannot be fairly said that this issue was squarely raised on appeal. Hence, it is necessary to further consider the claim of ineffectiveness directed toward appellate counsel on this issue.
It is evident that the reason the trial judge would not permit testimony concerning the influence of Waterfield upon Gore was because there was no evidence that Waterfield had anything to do with Gore’s killing of Elliott. According to the testimony of the surviving victim, Martin, it was Gore who took the gun out of the glove compartment of the truck, put it to her head and then grabbed her wrist along with Elliott’s wrist and held them together. Martin further testified that it was Gore who suggested that Waterfield drive them home “to have a little fun with them,” that Gore threatened to kill them, handcuffed their wrists together, and did all the talking and gave the orders. Gore was the only person she ever saw holding the gun and the one who sexually assaulted her. She said she was pretty sure that Water-field had left when they were brought to the house. She did not see Waterfield or anyone else besides Gore in the house and only heard Gore’s voice after they were brought inside. Michael Rock, the eyewitness to the shooting, said that the man who chased Elliott and killed her was Gore. Thus, even if it were shown that Waterfield had the ability to influence Gore, the evidence would not have supported the statutory mitigating circumstance of substantial domination of another person. See Hill v. State, 515 So.2d 176 (Fla.1987), cert. denied, — U.S. -, 108 S.Ct. 1302, 99 L.Ed.2d 512 (1988).
Gore argues, however, that the testimony was admissible as nonstatutory mitigating evidence pertaining to an aspect of his character. Thus, in Lockett v. Ohio, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978), the Court held that “the sentencer ... [must] not be precluded from considering, as a mitigating factor, any aspect of a defendant’s character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death.” Id. at 604, 98 S.Ct. at 2964-65 (emphasis in original) (footnote omitted). While the evidence in question had minimal relevance to the offense, we cannot say that it was totally unrelated to his character. Gore should have been permitted to introduce such evidence for whatever weight it might be given. Therefore, it becomes necessary to evaluate the claim of ineffectiveness of counsel by applying the two-prong test of Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).
In this respect, we find it unnecessary to decide whether appellate counsel was ineffective for not making the argument on appeal because we are convinced that Gore has failed to show the requisite prejudice resulting from the alleged substandard performance. In evaluating the ineffectiveness of counsel as it relates to an attack on a death sentence, the United States Supreme Court in Strickland said:
When a defendant challenges a death sentence ... the question is whether there is a reasonable probability that, absent the errors, the sentencer—includ-ing an appellate court, to the extent it independently reweighs the evidence— would have concluded that the balance of *1051 aggravating and mitigating circumstances did not warrant death.
In making this determination, a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury. Some of the factual findings will have been ... affected in different ways. Some errors will have had a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture, and some will have had an isolated, trivial effect. Moreover, a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support. Taking the unaffected findings as a given, and taking due account of the effect of the errors on the remaining findings, a court making the prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors.
466 U.S. at 695-96, 104 S.Ct. at 2068-69.
Measured by this criteria, we cannot say that if the witnesses had been permitted to testify of Waterfield’s influence over Gore that there is a reasonable probability that he would have received a life sentence rather than death. Recognizing that Water-field played no part in this brutal killing and that there were five aggravating circumstances and no mitigating circumstances, the omission of this evidence would not have affected the outcome of this case.
We affirm the order denying postconviction relief, and we deny the petition for habeas corpus. We also vacate the stay of execution, although the prior death warrant has now expired.
It is so ordered.
EHRLICH, C.J., and OVERTON, McDonald, shaw, barkett, GRIMES and KOGAN, JJ., concur.