614 So.2d 1111 (1992)
David Allen GORE, Petitioner,
v.
STATE of Florida, Respondent.
No. 92-3073.
District Court of Appeal of Florida, Fourth District.
November 6, 1992.
*1112 Jerome H. Nickerson, Jr., of the Law Offices of Jerome H. Nickerson, Jr., Miami Beach, for petitioner.
Robert A. Butterworth, Atty. Gen., Tallahassee, and Ralph Barriera, Asst. Atty. Gen., Miami, for respondent.
FARMER, Judge.
Petitioner was convicted of capital murder, kidnapping and sexual battery, and his death sentence was affirmed by the Florida Supreme Court. Gore v. State, 475 So.2d 1205 (Fla. 1985), cert. denied, 475 U.S. 1031, 106 S.Ct. 1240, 89 L.Ed.2d 348 (1986). The federal courts have since vacated the original sentence of death, however, and ordered resentencing on federal constitutional grounds. Gore v. Dugger, 763 F. Supp. 1110 (M.D.Fla. 1989), aff'd 933 F.2d 904 (11th Cir.1991), cert. denied, Singletary v. Gore, ___ U.S. ___, 112 S.Ct. 956, 117 L.Ed.2d 123 (1992). The case is now back before the Circuit Court in St. Lucie County for new sentencing proceedings.
During these proceedings at a deposition of petitioner's expert witness, the State demanded production of two documents provided by petitioner's lawyer to the expert witness before his deposition. Petitioner objected, and the State moved to compel the production of the two documents from petitioner. Petitioner argued that the documents constitute the work product of his counsel because they contain the attorney's thoughts and impressions as well as compilations of facts culled from numerous documents already in the voluminous record. The trial court did not review the documents in camera but instead ordered their production. It is that order which petitioner asks us to review by common law certiorari.
The State has moved to dismiss[1] this petition for a common law writ of certiorari, *1113 contending that because this is a capital case that has previously been before the supreme court we should defer to that court in deciding this discovery dispute. We disagree and deny the motion, taking the time to set out our reasons for the denial in order to facilitate further review of this question.
In its motion, the state contends that the supreme court is the proper court to consider this discovery dispute because it "has intimate familiarity with this case, and if the defendant again receives the death penalty, that court will hear the appeal (whereas if the defendant receives life, there will be no appeal at all)." The state does not contend that we lack jurisdiction to consider the petition; indeed it concedes that we clearly have it under Article V, section 4(b)(3), Florida Constitution, and rule 9.030(b)(3), Florida Rules of Appellate Procedure.
The state's reasoning is misplaced. The fact that the supreme court may never review the new sentence because the trial court may choose to reject the death penalty is dispositive. The effect of the federal court's invalidation of the original death penalty is to return this case to a point at which no sentence has yet been imposed. Hence it may become a capital case, but it is not one now and, for all we know, may never be.
Yet, a decision in this circumstance holding that only the supreme court is competent to pass on this discovery question would undoubtedly, and quite understandably, suggest that our supreme court should be the court of initial review on any number of interlocutory rulings of the trial court in a capital case. That result would embroil the supreme court in every potential death penalty case, before any death penalty has been imposed  indeed, even before any conviction. There is not a word in either the constitutional provision or the rule on death penalty jurisdiction that suggests that the drafters intended such a result. Confident that if we are wrong the supreme court will tell us so if it ever again reviews this case, we deny the motion to dismiss the petition.
Turning to the merits, we focus on the nature of the documents sought to be produced. As we understand it, the defendant faces the imposition of the death penalty at a forthcoming jury trial in what is now generally described as the "sentencing phase" in a capital case. He has indicated his intention to call an expert witness, whom he describes as a mental health expert, to testify on the existence of certain mitigating factors against the death penalty. The defendant's lawyer has prepared two documents for that expert, presumably to assist the expert in reaching the opinions sought to be adduced at the sentencing trial. One of the documents is a 22-page summary of testimony that the defendant gave in a co-defendant's case. The other document is a 5-page summary of events, entitled "David Gore Chronology."
Discovery in criminal cases is governed generally by the Florida Rules of Criminal Procedure. In this instance, the applicable provision is rule 3.220(g)(1), which provides:
(1) Work Product. Disclosure shall not be required of legal research or of records, correspondence, reports or memoranda, to the extent that they contain the opinions, theories, or conclusions of the prosecuting or defense attorney, or members of his legal staff.
At the same time, rule 3.220(d)(2)(ii) requires the defendant to disclose any "[r]eports or statements of experts made in connection with the particular case, including results of physical or mental examinations and of scientific tests, experiments or comparisons."
*1114 We think that the defendant here has made a substantial showing of the former, i.e., "work product" of counsel, rather than the latter, i.e., reports or statements of experts. The two documents originated from his lawyer, not from his expert witness, and thus clearly fit within the terms, "records, correspondence, reports or memoranda", used in the work product rule. The remaining requirement is whether such correspondence contains the "opinions, theories or conclusions" of the lawyer.
We do not see how they can avoid doing so. The first document, the 22-page summary of defendant's deposition in his co-defendant's case, is probably the model of an attorney's thoughts. A summary of testimony necessarily incorporates the summarizer's thoughts and ideas of what to include and what to exclude, what is important and what is inconsequential, what to emphasize and what to ignore, what is real and what is fanciful. To another lawyer knowledgeable of the case and its issues, this kind of summary declares the workings of the lawyer's mind who prepared it. It could easily be a road-map of the trial strategy of the lawyer.
So too with the 5-page chronology. The selection of what events to relate to the witness may tell the opposing lawyer more about what the trial lawyer intends to elicit and emphasize than any discovery deposition ever could. The nature of the facts selected, and the peculiar phrasing used in their articulation, open up the trial lawyer's thought processes and mental impressions to his adversary. Indeed, the prosecutor's zeal to obtain the documents betrays more than anything we can say about the importance of them.
The state rests its entitlement to these documents on the following statements from Johnson v. State, 608 So.2d 4 (Fla. 1992):
During cross-examination of Johnson's mental health experts, the prosecutor asked if they had considered Johnson's past illegal drug use in making their assessments of him. Johnson waived the statutory mitigator of having no prior criminal history and now argues that the prosecutor should have been precluded from questioning his witnesses about their knowledge of his prior criminal history. Again, we disagree with his contention.
We have held "that it is proper for a party to fully inquire into the history utilized by the expert to determine whether the expert's opinion has a proper basis." Parker v. State, 476 So.2d 134, 139 (Fla. 1985); Muehleman [v. State, 503 So.2d 310 (Fla. 1987), cert. denied, 484 U.S. 882 108 S.Ct. 39, 98 L.Ed.2d 170 (1987)]. The prosecutor's questions and the experts' answers explored the bases for those experts' opinions and rebutted their conclusions that Johnson's inability to conform his conduct to the requirements of law and his being under extreme mental or emotional distress developed shortly before Johnson committed these crimes. Thus, these questions were relevant, and the trial court did not err in allowing them to be asked and answered.
608 So.2d at 10-11. We think that the state has read much too much into this holding. The court was obviously dealing in Johnson not with a discovery dispute but with whether evidence was relevant and therefore admissible at trial.
The right of an adverse party to inquire into the facts underlying an opposing expert witness's opinion is covered by Florida Stat.Ann. section 90.705, which provides:
90.705 Disclosure of facts or data underlying expert opinion. 
(1) Unless otherwise required by the court, an expert may testify in terms of opinion or inferences and give his reasons without prior disclosure of the underlying facts or data. On cross-examination he shall be required to specify the facts or data.
(2) Prior to the witness giving his opinion, a party against whom the opinion or inference is offered may conduct a voir dire examination of the witness directed to the underlying facts or data for his opinion. If the party establishes prima facie evidence that the expert does not *1115 have a sufficient basis for his opinion, the opinions and inferences of the expert are inadmissible unless the party offering the testimony establishes the underlying facts or data.
See § 90.705, Fla. Stat. (1991). That section, as we can readily deduce from its text, supplies no foundation if applied literally for pretrial disclosure of the facts on which the expert's opinion is based. If anything, it delays such a disclosure until the witness is in court and testifying at the trial or proceeding.
The relevance of such an examination at trial does nothing, however, to establish a pretrial right of the prosecutor to learn what evidence defendant's lawyer might adduce to establish his defense. It furnishes no basis to set aside the work product rule and allow the prosecutor to find out before trial precisely what the defendant's lawyer has told his expert witness.
We therefore quash the trial court's order and direct that court to enter a protective order against the disclosure of the documents sought. We also dissolve our October 30, 1992, stay against the sentencing proceeding and expressly allow the trial court to proceed, if it so chooses, with the sentencing trial already scheduled to begin November 9, 1992.
CERTIORARI GRANTED; ORDER QUASHED; REMANDED WITH INSTRUCTIONS.
HERSEY and STONE, JJ., concur.
NOTES
[1] Actually, the state has designated its motion as one to "deny" this petition for common law certiorari. To the extent that the designation given to a motion has any bearing on its disposition, we question the wisdom and propriety of entitling this application as a motion to "deny". No party opposing pretrial certiorari review of a discovery ruling need necessarily seek "denial" of such extraordinary relief; we shall almost certainly begin our consideration with a strong inclination to deny it. If, however, we find a hint of merit in the petition, we shall undoubtedly ask the opposing party for a response, in which that party can make the desire for a denial of the petition quite plain. As the content of this particular motion discloses that it is directed only to the procedural aspect of which forum should decide the underlying issue presented in the petition for certiorari, we treat the state's application as a motion to "dismiss" the petition.