**David Alan GORE, Petitioner,**

v.

**Richard L. DUGGER, Secretary, Department of Corrections, State of Florida, Respondent.**

**No. 89–203 CIV–T–10(C).**

United States District Court,
M.D. Florida,
Tampa Division.

Aug. 17, 1989.

---

Billy Nolas, Office of Capital Collateral Representative, Tallahassee, Fla., for petitioner.

Ralph Barriera, Office of Atty. Gen., Miami, Fla., for respondent.

## MEMORANDUM OPINION

HODGES, District Judge.

This is a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 brought by a state prisoner under sentence of death. The petition was filed on February 14, 1989, together with an application for stay of the Petitioner's execution then set for February 16, 1989. In order that the Petitioner's claims could be judiciously considered, I entered a stay of execution on February 14, 1989.

The complete record has now been compiled. The issues have been briefed and the Petitioner's claims have been fully considered. Upon due consideration, I have concluded that Petitioner's claim based on *Hitchcock v. Dugger*, 481 U.S. 393, 107 S.Ct. 1821, 95 L.Ed.2d 347 (1987) and *Lockett v. Ohio*, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978) is meritorious and that the petition must be granted in order to afford the Petitioner a new sentencing hearing. With respect to all other claims, the petition is without merit and is denied.

## FACTS SURROUNDING THE OFFENSE

The Supreme Court of Florida, in disposing of the Petitioner's direct appeal, *Gore v. State*, 475 So.2d 1205 (Fla.1985), recited the facts of the case as follows:

Gore and his cousin picked up fourteen-year-old Regan Martin and seventeen-year-old Lynn Elliott who were hitchhiking to the beach. After the glove compartment in the pickup truck fell open and a gun became visible, Gore took the gun and held it to Regan's head. He grabbed the two girls' wrists and held them together. Gore then said that they should take the girls to Gore's home. He told the girls that if they said or did anything, they would be killed. When they arrived at his home, the girls were handcuffed and taken into a bedroom. The girls then were separated, and Lynn was tied up while Regan was handcuffed. Gore cut Regan's clothes off of her and sexually assaulted her on

three separate occasions. Regan testified that she heard noises in the other room after Gore had left her. She heard Gore tell Lynn to shut up or he would kill her. Gore also told Regan to be quiet or he would slit her throat and that he would do it anyway. Gore then came back into the room and put Regan in the attic where she stayed until rescued by a police officer.

Michael Rock, a fifteen-year-old boy, testified that on July 26, 1983, while riding his bicycle in the area of Gore's home, he heard screaming and observed a naked girl running down the driveway being chased by Gore who was also naked. He saw Gore catch up to her, drag her back to a palm tree, and shoot her twice in the head. Rock went home and told his mother, and she called the police. The police arrived and surrounded Gore's home. Lynn's body was found in the trunk of the car in the driveway. Her arms and legs had been tightly bound with rope. She had multiple abrasions on her body consistent with falling and being dragged. The gun used to kill her was found in Gore's home.

## HISTORY OF THE CASE

The Petitioner was indicted, tried and found guilty of first degree murder, two counts of kidnapping and three counts of sexual battery. Following a sentencing hearing, the Petitioner was sentenced to death for first degree murder. (R. 845–47).[1] The trial court also sentenced Petitioner to life imprisonment on each of the two counts of kidnapping, to be served concurrently, and on each of the three counts of sexual battery, to be served concurrently with each other but consecutively to the sentences imposed on the kidnapping charges. (R. 848–54).

On August 22, 1985, the Florida Supreme Court affirmed the convictions and sentences. *Gore v. State,* 475 So.2d 1205 (Fla. 1985). The United States Supreme Court denied certiorari on February 24, 1986.

*Gore v. Florida,* 475 U.S. 1031, 106 S.Ct. 1240, 89 L.Ed.2d 348 (1986).

On February 24, 1988, the Petitioner filed a motion for post conviction relief pursuant to Rule 3.850, Fla.R.Crim.P., in the state trial court. Shortly thereafter, the Governor of Florida signed Petitioner's first death warrant. Execution was scheduled for May 4, 1988.

On April 4, 1988, Petitioner filed a petition for a writ of habeas corpus in the Florida Supreme Court.

The state trial court conducted an evidentiary hearing on Petitioner's Rule 3.850 motion on April 15, 18 and 19, 1988. At the conclusion of the hearing, the court entered an order denying Petitioner's motion. (EH 1121–26).

The Florida Supreme Court consolidated Petitioner's appeal from the trial court's denial of his Rule 3.850 motion with his petition for a writ of habeas corpus and, following oral argument, granted Petitioner a stay of execution. On August 18, 1988, the Court affirmed the trial court's denial of Petitioner's Rule 3.850 motion and also denied his petition for a writ of habeas corpus. *Gore v. Dugger/Gore v. State,* 532 So.2d 1048 (Fla.1988).

The Governor of Florida signed Petitioner's second death warrant on January 31, 1989. The Petitioner filed the present petition in this Court on February 14, 1989, together with an application for stay of the execution then scheduled for February 16. A stay was entered due to the short time remaining before the scheduled execution and the necessity that the Court review the voluminous record.

■ The State does not dispute that Petitioner has exhausted his state remedies as required by 28 USC § 2254; and, as previously noted, the state trial court has conducted an evidentiary hearing. The court considered and determined at that time the Petitioner's claims, including his claim of

---

1. The record of the proceedings in the Petitioner's trial and direct appeal will be referred to by the symbol "R" followed by the appropriate page number. The record of the proceedings in the state court post conviction evidentiary hearing will be referred to by the symbol "EH" followed by the appropriate page number.

ineffective assistance of counsel. While factual findings of the state court are entitled to a presumption of correctness under 28 USC § 2254(d) and *Sumner v. Mata,* 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981), claims of ineffective assistance of counsel present mixed questions of law and fact, and as such, the state court's determination of ineffective assistance claims are not entitled to that presumption. *Douglas v. Wainwright,* 714 F.2d 1532, (11th Cir. 1983), vacated 468 U.S. 1206, 104 S.Ct. 3575, 82 L.Ed.2d 874, aff'd on remand 739 F.2d 531 (11th Cir.1984). Nevertheless, a review of the transcript of the post conviction proceedings in the state court demonstrates that the Petitioner was afforded a full and fair hearing within the meaning of 28 USC § 2254(d)(6), and that transcript, taken together with the trial record, excludes the necessity of an evidentiary hearing on any of the claims now before this Court.[2]

The Petitioner has presented seventeen claims of alleged constitutional deprivation. Each will be considered in turn.

### I

In his first claim Petitioner asserts that his rights under the Sixth, Eighth and Fourteenth Amendments were violated when the state trial court precluded him from presenting certain mitigating evidence to the sentencing jury in violation of the Supreme Court's decisions in *Hitchcock v. Dugger,* 481 U.S. 393, 107 S.Ct. 1821, 95 L.Ed.2d 347 (1987) and *Lockett v. Ohio,* 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978).

In *Hitchcock* and *Lockett* the Court made it clear that the Eighth Amendment, applicable to the states through the Fourteenth Amendment, requires that a capital sentencing jury not "be precluded from considering, as a mitigating factor, *any* aspect of a defendant's character or record that the defendant proffers as a basis for a sentence less than death." *Jones v. Dug-*

*ger,* 867 F.2d 1277, 1279 (11th Cir.1989). (emphasis in original) (citations omitted). In this case Petitioner contends that the trial court committed *Hitchcock/Lockett* error when it excluded mitigating evidence on two subjects: Petitioner's drug and alcohol abuse, and the dominance exercised over him by his cousin, Frederick Waterfield. With respect to his use of drugs and alcohol, Petitioner attempted to introduce evidence at his sentencing hearing to show that he had been drinking and taking pills around the time of the commission of the offenses. Defense counsel stated to the court that he planned to have members of Petitioner's family testify both that he had been acting strangely during the days prior to the murder and that, because of the way he was acting when they saw him shortly after his arrest, they believed that he had been drinking. Petitioner also sought to introduce evidence that, after the crime, a half empty bottle of vodka and some pills were found in his bedroom. The trial judge refused to admit any of this evidence ruling that it was irrelevant because there was no direct evidence that Petitioner was drinking while the offenses were being committed and because there was testimony from the surviving victim and law enforcement personnel to the effect that Petitioner did not appear drunk. (R. 3047–56).

In evaluating Petitioner's *Lockett/Hitchcock* claim, this Court is, of course, bound by the Eleventh Circuit's interpretation of those decisions. One of the Circuit's most recent decisions on the point is *Demps v. Dugger,* 874 F.2d 1385, 1389–90 (11th Cir.1989). Because the *Demps* case produced an opinion by each of the members of the panel, however, it is necessary to review those opinions in some detail to determine the current state of *Lockett/Hitchcock* law in the circuit.

In *Demps* the petitioner was convicted of first degree murder and was sentenced to death for the killing of a fellow prison

---

**2.** See Rule 8, Rules—Section 2254 cases (adopted pursuant to 28 USC § 2254). Petitioner contends that the state court did not give him a complete hearing because it did not receive evidence on his claim concerning the ineffec-

tiveness of his mental health expert. As is more fully discussed *infra,* given the Court's resolution of this issue, no hearing is needed on this claim.

inmate. Demps challenged his sentence on *Hitchcock* grounds by arguing that the trial court's instructions to the jury impermissibly precluded them from considering nonstatutory mitigating evidence. The Court of Appeals agreed, concluding that "the judge gave an instruction functionally identical to that [erroneously] given in *Hitchcock*." *Demps*, at 1389. The three judges on the panel did not agree, however, on how to properly analyze and evaluate the *Hitchcock* claim.

In the lead opinion for the court, Judge Fay began his analysis by stating that *Hitchcock* error can be harmless under "the strict *Chapman* criterion." *Id.* at 1389 *citing Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). And, for a *Hitchcock* error to be harmless, a court must, after an in depth review of the entire record, "determine beyond a reasonable doubt that the proposed mitigating evidence regarding the defendant's character would not have influenced the jury to recommend a life sentence." *Id.* Judge Fay then examined each of the four types of evidence which Demps alleged would have influenced the jury to recommend life and concluded that since none of the evidence excluded from the jury's consideration would have affected its sentencing recommendation, the *Hitchcock* error was harmless and resentencing not required. *Id.* at 1389–91.[3]

Judge Clark, in his special concurrence, agreed with Judge Fay that Demps's petition should be denied but disagreed with his handling of the *Hitchcock* claim because the analysis was based on the harmlessness of the *Hitchcock* error. *Id.* at 1394 (Clark, J., specially concurring). Judge Clark concluded that "[t]his case is not a potential *Hitchcock* error case. Although there was an erroneous *Hitchcock* instruction, there has been no showing that any credible non-statutory mitigating evidence exists." *Id.* at 1395 (Clark, J., specially concurring). Since Judge Clark concluded that the "evidence" Demps wished to present to the jury did not reach the threshold of being *Hitchcock* mitigating evidence (because there were no facts to substantiate his claims), he did not believe that a *Chapman* harmless error analysis was necessary or appropriate. *Id.* at 1396 (Clark, J., specially concurring). Indeed, Judge Clark found the case to be comparable to *Clark v. Dugger*, 834 F.2d 1561 (11th Cir.1987), *cert. denied*, 485 U.S. 982, 108 S.Ct. 1282, 99 L.Ed.2d 493 (1988), in which the court found:

> Here, however there simply were no nonstatutory mitigating circumstances to consider. Clark did not introduce any evidence that would support the existence of a nonstatutory mitigating circumstance. As explained, *supra*, Clark's counsel, after her investigation, made a tactical decision that any testimony at the penalty phase could only prove harmful. Thus, Clark failed to introduce any mitigating evidence whatever.

*Clark*, 834 F.2d at 1569 *quoted in Demps*, at 1396 (Clark, J., specially concurring).

---

**3.** The four types of evidence offered by Demps and analyzed by Judge Fay were as follows:

(1) Evidence of "honorable military combat service." Judge Fay concluded that exclusion of this evidence from the jury's consideration was harmless because Demps's service record was not "honorable" at all. He was given one special court-martial, numerous other punishments, and a dishonorable discharge which was eventually upgraded to a general discharge. Judge Fay thus concluded that Demps's military record did not reflect favorably on his character and would not have influenced the jury to recommend life.

(2) Evidence of a history of drug abuse. Judge Fay concluded that exclusion of this evidence from the jury's consideration was also harmless because Demps's drug addiction predated his incarceration on unrelated charges and that no evidence existed to show that drugs or treatment for drug dependence influenced his participation in the prison murder.

(3) Evidence of a good prison record. Judge Fay concluded that exclusion of this evidence from the jury's consideration was harmless because Demps's prison record was not good and, in fact, indicated that he had a record of continuing disciplinary problems.

(4) Evidence that his two co-perpetrators received life sentences. Judge Fay concluded that exclusion of this evidence from the jury's consideration was harmless because Demps's prior criminal record was more severe than his co-perpetrators and that it was sufficient to justify imposing a more serious penalty. *Id.* at 1389–91.

Although Judge Clark recognized that the *Clark* court had held that any *Hitchcock* error in that case was harmless under *Chapman*, he stressed that "harmless" was an incorrect label because "[w]here there is no nonstatutory mitigating evidence there can be no *Hitchcock* error and harmlessness need not be considered." *Id.* Further, he rejected the application of a harmless error standard in a case in which legitimate *Hitchcock* evidence might be offered stating that "[i]f such evidence exists, the case should be returned to the state court for resentencing ..." *Id.* at 1395 (Clark, J., specially concurring) (citations omitted). Judge Clark explained that

> I deem it an inappropriate function for a federal court to weigh nonstatutory mitigating evidence against aggravating circumstances and decide whether a petitioner should get the death penalty as an alternative to a resentencing hearing. That is an invasion of the separate states' rights and obligations for their courts to insure appropriate sentencing in death penalty cases. ... If there is credible evidence demonstrated by the petitioner, we should return the case to the state court for resentencing.

*Id.* at 1396 (Clark, J., specially concurring).

Dissenting on the *Hitchcock* issue was Judge Johnson. Initially, citing *Clark v. Dugger*, Judge Johnson agreed with Judge Fay that *Hitchcock* error may be harmless in some circumstances, but he immediately qualified his statement by noting that "this Court has only once found *Hitchcock* error to be harmless, *see Clark, supra*, and the Supreme Court has never found the error to be harmless in its four reversals of death sentences for failure of the sentencer to consider non-statutory mitigating circumstances."[4] *Id.* at 1393 (citations omit-

ted) (Johnson, J., concurring in part, dissenting in part). Judge Johnson further noted that "[t]he *Knight* decision[5] leaves little room for the application of harmless error analysis, except in the situation where non-statutory mitigating evidence could have been proffered." *Id.; see also Knight v. Dugger*, 863 F.2d 705 (11th Cir. 1988). Thus, Judge Johnson agreed with Judge Clark that applying a harmless error analysis to a *Hitchcock* error is inappropriate, except for the situation in which no mitigating evidence is offered (a circumstance which, as discussed *supra*, Judge Clark considers to be outside the realm of *Hitchcock* altogether).

Judge Johnson's disagreement with Judge Clark, and his dissent from the result reached by the court, stemmed from the fact that he believed the case should be remanded to the district court for inquiry into whether Demps had any legitimate mitigating evidence to present instead of having of the Court of Appeals make that initial factual determination. Judge Johnson believed that if any of Demps's claims were true, then excluding them from the jury's consideration was constitutional error. *Id.* at 1394 (Johnson, J., concurring in part, dissenting in part). Thus, Judge Johnson concluded that "[t]he determination of whether the error committed in Demps' case was harmless or not depends entirely on the truth of his claim that unconsidered mitigating factors existed." *Id.*

A synthesis of the three opinions in *Demps* leads the Court to conclude that the following propositions were adopted by a majority of the panel and thus constitute binding precedent which this Court must apply. First, a district court must deter-

---

**4.** Subsequently, as discussed *infra*, in a recently released opinion, *Tafero v. Dugger*, 873 F.2d 249, 252–53 (11th Cir.1989) (per curiam), the Circuit once again found a *Hitchcock* error to be harmless.

**5.** In *Knight v. Dugger*, 863 F.2d 705 (11th Cir. 1988), the Court of Appeals rejected the State's contention that the failure of the jury to consider all mitigating factors was harmless error because of the large number of aggravating factors that had been found. The *Knight* court stated:

> No authority has been furnished for this proposition and it seems doubtful that any exists. The State's theory, in practice, would do away with the requirement of an individualized sentencing determination in cases where there are many aggravating circumstances. It is this requirement, of course, that is at the heart of *Lockett* and its progeny.
>
> *Id.* at 715.

mine, when reviewing a *Hitchcock* claim, whether the mitigating evidence sought to be placed before the jury is, in fact, mitigating evidence. In making this determination the district court may review not only the evidence presented on the issue by the petitioner but may also consider any evidence advanced by the State which contests the truthfulness or relevancy of the petitioner's evidence. If the court concludes that the evidence offered by the petitioner is either patently untrue or irrelevant, i.e., that it is not mitigating, then it was not error (or, at worst, was harmless error) for the trial court to have precluded the jury from considering it. Second, however, if the excluded evidence does have some mitigating value, then the court should not attempt to balance the weight of all the evidence presented at the sentencing hearing by conducting a harmless error review, but instead should vacate the death sentence and return the case to the state court for resentencing.

The Court of Appeals' recent decision in *Tafero v. Dugger*, 873 F.2d 249, 252 (11th Cir.1989) (per curiam), does not alter this conclusion. In *Tafero* a different panel of the Court (consisting of Judges Vance, Kravitch and Hatchett) stated that *Hitchcock* error could be harmless and held that it was so in that case. *Id.* at 252. The court noted, however, that the case

> parallels the situation in *Clark v. Dugger*. Tafero's counsel, like the *Clark* defendant's counsel, purposely presented no non-statutory mitigating evidence.... The *Clark* court held that any *Hitchcock* error was harmless because of the defen-

dant's counsel's failure to present non-statutory mitigating evidence. Likewise, we conclude that any *Hitchcock* error by Tafero's counsel was harmless.

*Id.* at 252 n. 5.

■ *Tafero,* therefore, when examined in light of its facts, does not affect the Court's understanding of the law of the Circuit on the *Hitchcock* issue as established by *Demps;* and, applying that law to the facts of this case leads the Court to conclude that constitutional error was committed during Petitioner's sentencing hearing. The truthfulness of the alcohol and drug evidence sought to be introduced, the presence of the half empty bottle of vodka, the pills and the Petitioner's relatives' statements that he behaved as though he were under the influence, has not been questioned.[6] Nor can the evidence be considered irrelevant. The evidence could support an inference that the Petitioner had been drinking and/or taking pills at or about the time the murder was committed. This certainly can be considered as mitigating by the sentencing jury.[7] *See e.g., Hargrave v. Dugger,* 832 F.2d 1528 (11th Cir. 1987); *Fead v. State,* 512 So.2d 176 (Fla. 1987). Thus, although in the totality of the circumstances the Petitioner's mitigating evidence may not be strong, it is for the state jury and judge to decide what sentence is appropriate when *all* mitigating factors are considered. Since the jury did not have the opportunity to consider all mitigating evidence, the Petitioner's sentence of death was imposed in violation of the Eighth Amendment and relief must be granted on this claim.[8]

---

**6.** Certainly, though, the State has sought to disprove the truthfulness of the *inference* Petitioner hopes the jury draws from the evidence, that he was intoxicated at the time of the murder. However, this attack on the truthfulness of the ultimate conclusion is qualitatively different from an attack on the truthfulness or reliability of the actual evidence itself. Unlike the situation in *Demps* in which the State sought to disprove the evidence of the existence of an honorable discharge, the State does not argue here that the pills or vodka bottle were not found in Petitioner's room. Further, an attack on the inference a petitioner hopes a jury draws from truthful evidence cannot be adequate to sustain the exclusion of the evidence itself. Otherwise, a trial court could preclude a defen-

dant's mother from testifying that her child was always a good boy when his record is to the contrary. Clearly this type of character evidence cannot be barred under *Lockett/Hitchcock.* Instead, it is in the province of the jury to weigh its credibility.

**7.** The jury, of course, may also consider the State's evidence which it contends shows that the Petitioner was not intoxicated at the time of the offense.

**8.** As previously indicated, Petitioner has raised one other *Lockett/Hitchcock* claim arguing that the trial court improperly excluded from the jury's consideration evidence concerning Water-

## II

In his second claim Petitioner contends that he was deprived of his due process and equal protection rights under the Fourteenth Amendment, as well as his rights under the Fifth, Sixth, and Eighth Amendments, because his court-appointed mental health expert failed to conduct a competent and professionally appropriate evaluation of him thereby overlooking numerous mitigating factors which could have been presented to the sentencing jury. More specifically, Petitioner asserts that Dr. David Tingle, the psychiatrist appointed by the Court at the Petitioner's request,[9] rendered professionally inadequate services in that he failed:

> to follow or even understand the simple requests of counsel regarding the scope of the evaluation, to conduct proper testing, and to review the amply available and extensive background materials and collateral data which would have demonstrated [Petitioner's] life-long mental disabilities, his history of severe alcohol and substance abuse, the effects of intoxicants on his character, personality, behavior, and control, and a veritable plethora of information which would have, if properly assessed, evaluated, and related in a professionally competent manner, established myriad statutory and non-statutory mitigating circumstances.

(Petition for writ of habeas corpus, p. 75). Petitioner alleges that because of Dr. Tingle's inadequate assistance with respect to investigating and evaluating potential mitigating evidence to be presented at the penalty phase, his sentence of death was imposed in an unfair and unreliable manner. Petitioner requests that this Court conduct an evidentiary hearing since the state court refused to hold a hearing on this claim.

In sum, Petitioner's claim is that his court-appointed psychiatrist rendered him ineffective assistance; and he relies on the Supreme Court's decision in *Ake v. Oklahoma*, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985), to support his contention that the Due Process Clause requires that a criminal defendant be given competent psychiatric assistance to aid him in preparing his defense, including the presentation of mitigating circumstances. *Ake* and its progeny, however, while establishing a limited right to court-appointed psychiatric assistance in presenting a defense, do not stand for the expansive proposition Petitioner asserts.

In *Ake*, the Supreme Court considered an indigent capital defendant's need for psychiatric assistance both at trial and at the penalty phase. With respect to the guilt phase, the Court held that as a matter of due process

> when a defendant demonstrates to the trial judge that his sanity at the time of the offense is to be a significant factor at trial, the State must, at a minimum, assure the defendant access to a competent psychiatrist who will conduct an appropriate examination and assist in evaluation, preparation and presentation of the defense.

*Ake*, 105 S.Ct. at 1097. The Court's discussion of the need for psychiatric assistance during the penalty phase was considerably more narrow. The Court focused on the fact that in some states the jury is allowed to consider psychiatric evidence of the defendant's future dangerousness in fixing or recommending sentence. The Court held

> In such a circumstance, where the consequence of error is so great, the relevance of *responsive* psychiatric testimony so evident, and the burden on the State so

---

field's domination over him. Given the Court's determination that a resentencing is mandated because of the exclusion of the drug and alcohol evidence, the Court need not consider this claim. The Court notes that in its opinion on Petitioner's Rule 3.850 motion, the Florida Supreme Court has already stated that this domination evidence should have been admitted at the sentencing phase. *Gore v. Dugger*, 532 So.2d 1048, 1050 (Fla.1988). Thus, on resentencing

the Petitioner will also be able to introduce this evidence.

9. The Court notes that in Petitioner's motion for the appointment of psychiatrists and psychologists, he specifically requested "an order authorizing the defendant to retain the services of Dr. David Tingle, M.D., a competent and qualified psychiatrist." (R. 32). The trial court granted Petitioner's motion and appointed Dr. Tingle. (R. 413).

slim, due process requires access to a psychiatric examination on relevant issues, to the testimony of the psychiatrist, and to assistance in preparation at the sentencing hearing.

*Id.* (emphasis added). *See also Thompson v. Wainwright,* 787 F.2d 1447, 1459 (11th Cir.1986), *cert. denied,* 481 U.S. 1042, 107 S.Ct. 1986, 95 L.Ed.2d 825 (1987).

In this case, Petitioner does not claim that he was denied the assistance of a psychiatrist in determining whether to present an insanity defense; hence, *Ake*'s first principle is inapplicable. The Court concludes that *Ake*'s second principle is similarly inapplicable because "[u]nlike the sentencing situation in *Ake,* [Petitioner's] prosecutor had no need to present psychiatric evidence to show an aggravating factor, and he presented none. The dangers and inequities which concerned the Court in *Ake* consequently did not exist." *Bowden v. Kemp,* 767 F.2d 761, 764 n. 5 (11th Cir.1985). *Ake* simply stands for the proposition that a defendant must be afforded psychiatric assistance at the penalty phase to rebut the State's own psychiatric evidence. Where no such evidence is presented, *Ake* confers no constitutional right to state afforded psychiatric assistance at the penalty phase. Since, as previously noted, the State presented no psychiatric testimony during the penalty phase of Petitioner's trial, he cannot claim to have a federal right to the assistance of a psychiatrist at that phase of trial.

██ Petitioner also argues that the denial of the effective assistance of a psychiatrist at the penalty phase violated his rights under Florida law. Two recent decisions of the Florida Supreme Court appear to give criminal defendants a slightly expanded right under state law to the assistance of a psychiatrist at the penalty phase when there are "clear indications of either mental retardation or organic brain damage." *State v. Sireci,* 502 So.2d 1221, 1224 (Fla.1987) *citing Mason v. State,* 489 So.2d 734 (Fla.1986). In this case, however, the trial court specifically found that the Petitioner's right to a psychiatrist under state law was not violated and the Florida Su-

preme Court agreed. This Court's review of that decision is limited to the question of whether the state courts' finding on an issue of state law is "so unprincipled or arbitrary as to somehow violate the United States Constitution." *Barclay v. Florida,* 463 U.S. 939, 103 S.Ct. 3418, 3423, 77 L.Ed.2d 1134 (1983). Upon review of the record, the Court cannot say that the state courts' decision was arbitrary or irrational. Petitioner, therefore, has failed to demonstrate that he is entitled to relief.

Accordingly, this claim is DENIED.

### III

██ Petitioner asserts that he was convicted on the basis of statements obtained in violation of the Fifth, Sixth, Eighth and Fourteenth Amendments. More specifically, Petitioner contends that the trial court impermissibly allowed certain statements he gave to law enforcement personnel to be admitted into evidence in violation of *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) and *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981). Petitioner argues that the statements he gave to Detectives Bevis and DuBose at the Sheriff's Office, which were later admitted into evidence at his trial, were obtained only after he had previously requested the presence of counsel.

Upon review of the record, the Court cannot agree with Petitioner that there was a *Miranda/Edwards* violation in this case. The testimony presented to the trial court during its hearing on Petitioner's motion to suppress discloses that immediately upon arrest at his parents' home Petitioner was read the *Miranda* warnings. (R. 1222, Testimony of Lt. Curt Keuhn). In response, Petitioner indicated that he "had a lot of things to get off his chest" and *then* he wanted to speak with a lawyer. (R. 1222, Testimony of Lt. C. Keuhn; R. 1244 Testimony of Ofc. C.C. Walker; R. 1307, Testimony of Det. Neil Bevis). Upon his arrival at the Sheriff's Office, Petitioner was reminded of his *Miranda* rights and he once again indicated a willingness to make certain statements without a lawyer being present. (R. 1311–12, Testimony of Det. N.

Bevis). It was these statements which were admitted into evidence and about which Petitioner now complains.

Petitioner's argument that he explicitly or equivocally invoked his right to counsel is without merit. Petitioner clearly and unambiguously stated that he understood his rights [10] and that he wished to make certain statements to police before speaking with an attorney. Petitioner's statements both immediately after his arrest and again at the Sheriff's Office demonstrate an intent to waive his *Miranda* rights at least to the extent of making certain initial statements. Petitioner's mere mentioning of his desire to consult with an attorney at some time in the future (as opposed to a present request for an attorney) was not an equivocal request for counsel sufficient to require that the police terminate questioning until clarified. *See Bruni v. Lewis,* 847 F.2d 561, 564 (9th Cir.), *cert. denied,* 488 U.S. 960, 109 S.Ct. 403, 102 L.Ed.2d 391 (1988); *see also United States v. Jardina,* 747 F.2d 945, 949 (5th Cir.1984), *cert. denied,* 470 U.S. 1058, 105 S.Ct. 1773, 84 L.Ed.2d 833 (1985) (the word attorney has no talismanic qualities; a defendant does not invoke his right to counsel merely by mentioning the word). Therefore, it was not erroneous for the trial court to deny Petitioner's motion to suppress and to permit his statements to be admitted into evidence.

Accordingly, this claim is DENIED.

### IV

A jury can find an aggravating circumstance under Florida Statute § 921.141(5)(h) if they find that "[T]he capital felony was especially heinous, atrocious, or cruel." The Petitioner contends that the Florida Supreme Court has interpreted this statutory aggravating circumstance in an unconstitutionally overbroad manner in violation of *Maynard v. Cartwright,* 486 U.S. 356, 108 S.Ct. 1853, 100 L.Ed.2d 372 (1988), and the Eighth and Fourteenth Amendments. The Petitioner further contends

that the trial court's instructions to the jury failed to guide the jury's sentencing discretion and provided "no principled way to distinguish this case, in which the death penalty was imposed, from the many cases in which it was not." *Godfrey v. Georgia,* 446 U.S. 420, 100 S.Ct. 1759, 1767, 64 L.Ed.2d 398 (1980). These arguments are without merit.

■ The Florida Supreme Court has held that the "especially heinous, atrocious or cruel" statutory language is directed only at "the conscienceless or pitiless crime which is unnecessarily torturous to the victim." *State v. Dixon,* 283 So.2d 1, 9 (Fla. 1973). See also *Halliwell v. State,* 323 So.2d 557, 561 (Fla.1975); *Tedder v. State,* 322 So.2d 908, 910 (Fla.1975); *Alford v. State,* 307 So.2d 433, 445 (Fla.1975). In light of the construction placed upon § 921.141(5)(h) in these cases, the provision is not constitutionally overbroad. *Proffitt v. Florida,* 428 U.S. 242, 96 S.Ct. 2960, 2968, 49 L.Ed.2d 913 (1976).

■ In instructing the jury with respect to this statutory aggravating circumstance, the trial judge stated, in pertinent part:

Now, the aggravating circumstances that you may consider are limited to any of the following that are established by the evidence ...

Now, the crime—the fourth, the crime for which the defendant is to be sentenced was especially wicked, evil, atrocious or cruel. Now, this aggravating circumstance is only applicable if the State of Florida has proven beyond a reasonable doubt that the capital felony was accomplished by such additional acts as to set the crime apart from the norm of capital felonies.

The murder must have been a consciousless (sic) or pitiless crime which was unnecessarily torturous to the victim. (Tr. 3232–33).

This clarifying instruction substantially complies with the limiting construction placed upon § 921.141(5)(h) by the Florida

---

**10.** The Court notes that Petitioner was an auxiliary police officer who was trained in arrest procedures and *Miranda* rights.

Supreme Court as approved in *Proffitt.* Moreover, the Court agrees with the Florida Supreme Court that this aggravating circumstance was established beyond a reasonable doubt. *Gore v. State,* 475 So.2d 1205, 1210–11 (Fla.1985). Section 921.-141(5)(h) is not unconstitutional as applied in this case.

Accordingly, this claim is DENIED.

V

■ The Petitioner also contends that the aggravating circumstance as set forth in Fla.Stat. § 921.141(5)(i) is unconstitutional on its face and as applied in this case. Section 921.141(5)(i) allows the sentencing court to find an aggravating circumstance where "the ... homicide ... was committed in a cold, calculated, and premeditated manner without any pretense of moral or legal justification." The Petitioner argues that this aggravating factor does not genuinely narrow the class of persons eligible for the death penalty. See *Zant v. Stephens,* 462 U.S. 862, 877, 103 S.Ct. 2733, 2742, 77 L.Ed.2d 235 (1982).

The Florida Supreme Court has held that § 921.141(5)(i) requires a "heightened" level of premeditation and, therefore, does narrow the class of persons eligible for the death penalty. In *Jent v. State,* 408 So.2d 1024 (Fla.1981), *cert. denied* 457 U.S. 1111, 102 S.Ct. 2916, 73 L.Ed.2d 1322 (1982), the Court held that "the level of premeditation needed to convict in ... a first degree murder trial does not necessarily rise to the level of premeditation in subsection (5)(i)." *Id.* at 1032. See also *Card v. State,* 453 So.2d 17, 23 (Fla.1984), *cert. denied* 469 U.S. 989, 105 S.Ct. 396, 83 L.Ed.2d 330 (1984) ("premeditation must rise to a level beyond that which is required for a first degree murder conviction"). In *Brown v. State,* 473 So.2d 1260 (Fla.1985) *cert. denied* 474 U.S. 1038, 106 S.Ct. 607, 88 L.Ed.2d 585 (1985), the court held that "[T]he factor places a limitation on the use of premeditation as an aggravating circumstance in the absence of some quality setting the crime apart from mere ordinarily premeditated murder." *Id.* at 1268. *See Combs v. State,* 403 So.2d 418, 421 (Fla.

1981), *cert. denied,* 456 U.S. 984, 102 S.Ct. 2258, 72 L.Ed.2d 862 (1982). The Eleventh Circuit Court of Appeals *en banc* has held that, given these limiting constructions, § 921.141(5)(i) sufficiently narrows the class of defendants eligible for the death penalty. *Harich v. Dugger,* 844 F.2d 1464, 1468–69 (11th Cir.1988) (*en banc*) (specifically adopting relevant portions of the panel opinion in *Harich v. Wainwright,* 813 F.2d 1082, 1101–04 (11th Cir.1987)). Subsection (5)(i) is, therefore, not unconstitutional on its face.

The Petitioner further contends, however, that this aggravating circumstance has been inconsistently applied by the Florida Courts. This same argument was rejected in *Harich v. Dugger,* 844 F.2d 1464, 1468–69 (11th Cir.1988) (*en banc*). The Court finds the Petitioner's arguments in this respect similarly unpersuasive. "[W]hile the line between 'ordinary' premeditation and the 'heightened' cold, calculated premeditation is a thin one, petitioner has not shown that the state has applied this factor in an unconstitutionally arbitrary manner." 813 F.2d at 1103. See *Harich v. Dugger,* 844 F.2d 1464, 1468–69 (11th Cir.1988) (*en banc*). Moreover, the Court agrees with the Florida Supreme Court that the facts of this case are sufficient to show the heightened premeditation required for the application of subsection (5)(i). *Gore v. State,* 475 So.2d 1205, 1211 (Fla.1985).

Accordingly, this claim is DENIED.

VI

■ Petitioner seeks relief on the basis that defense counsel was improperly restricted in making his closing argument in the penalty phase of the case.

Petitioner was prosecuted for first degree murder under two theories: premeditated murder and felony murder. During the closing arguments following the penalty phase, Petitioner's counsel sought to argue that if the jury believed that Petitioner's codefendant, Freddy Waterfield, had committed the murder and that Petitioner's conviction was based on felony murder, then the aggravating factors that

**1124**

the capital murder was heinous, atrocious, or cruel and cold, calculated, and premeditated did not apply to Petitioner.[11] The trial court precluded this argument, finding that it misstated the law.

A conviction based on felony murder when the defendant was not the triggerman would not, as a matter of Florida law, preclude the jury from considering these two aggravating factors during the sentencing phase. The State properly points out that the legal threshold to apply an aggravating factor is the defendant's conviction of a capital felony as opposed to the defendant's actual role in the crime. Defense counsel erroneously sought to argue that heinous and cruel, cold and calculated could only apply in the instance that the defendant did the actual killing. The Court properly prevented counsel from making that argument.[12] *United States v. Trujillo,* 714 F.2d 102 (11th Cir.1983). Hence, the trial court did not deny Petitioner's Sixth, Eighth, or Fourteenth Amendment rights by restricting his closing argument.

Accordingly, this claim is DENIED.

### VII

■ In his seventh claim, Petitioner asserts that his right to an impartial jury under the Sixth Amendment and the Flor-

ida Constitution was violated because the trial court allegedly prevented Petitioner's counsel from engaging in adequate voir dire examination of the jury panel. During voir dire, Petitioner's counsel sought to ascertain whether any juror possessed such a predisposition toward the death penalty that he or she would be unable to recommend life if Petitioner was found guilty of first degree murder. Defense counsel asked:

> Concerning the death penalty, is there someone here that feels so strongly in favor of the death penalty that you would never under any circumstances be able to recommend mercy in a case in which the defendant was convicted of first degree murder?

(R. 1595). The Court sustained the State's objection to that question on the grounds that "mercy" was not referred to in the death penalty statute.

■ Though sustaining the State's objection may have been incorrect under Florida law, the trial court's action did not prejudice defendant's right to an impartial jury.[13] The Sixth Amendment limits the State's power to exclude jurors based on their views about capital punishment. However, a juror may be excluded for cause if his views

---

**11.** Petitioner's counsel stated:
> if any of you decided that David Gore ... was guilty of first-degree murder because Freddy had done it and that was felony murder ... I submit to you that these aggravating circumstances that Mr. Stone is arguing for, many of them don't apply.

(R. 3222–26). F.S.A. § 921.141(5)(h) and (i) list the two aggravating factors that Petitioner argued did not apply:
> (h) The capital felony was especially heinous, atrocious, or cruel.
> (i) The capital felony was a homicide and was committed in a cold, calculated, and premeditated manner without any pretense of moral or legal justification.

**12.** The judge did point out that defense counsel could argue that the facts did not support finding that aggravating factor:
> I'll permit you to argue that the crime was not committed in a cold, calculated, way ... and it's not an aggravating circumstance; but I will not permit you to argue that simply because Mr. Waterfield did the killing, that is not an aggravating circumstance.

(R. 3225) [and in the same conversation the Court also stated]
> I think you can argue that the fact it may not be premeditated, the fact that somebody else did the shooting ...

(R. 3224).

**13.** The Supreme Court of Florida decided in Petitioner's appeal that pursuant to Florida law defense counsel should have been permitted to ask the jurors whether they could have recommend mercy. *Gore v. State,* 475 So.2d 1205, 1207 (Fla.1985) However, the Court also found that the trial court's sustaining the state's objection "was harmless error beyond a reasonable doubt." *Id.* There was no showing of prejudice to the defendant because
> The jury was thoroughly questioned in regard to their attitudes toward the death penalty and whether they felt it should be automatically imposed or whether they would follow the court's instructions and make sure the circumstances were proved to support it before they would consider it.

*Id.*

would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath.

*Adams v. Texas,* 448 U.S. 38, 44, 100 S.Ct. 2521, 2526, 65 L.Ed.2d 581 (1980). Indeed, "[t]he State may insist ... that jurors will consider and decide the facts impartially and conscientiously apply the law as charged by the court." *Id. see also Wainwright v. Witt,* 469 U.S. 412, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985). The record here clearly shows that the Court inquired of the prospective jurors whether they had any bias or prejudice which would prevent them from being impartial or from following the Court's instructions. R. 1497–1502). Although the trial court did not allow defense counsel to use the term "mercy," the court did not foreclose counsel from asking jurors whether, given a guilty verdict, "they cannot render an advisory opinion back to this Court with reference to life imprisonment not to exceed twenty-five years." (R. 1596).[14] Overall, the record demonstrates that the subject of predisposition in favor of the death penalty was adequately addressed and that Petitioner's Sixth Amendment right to an impartial jury and an adequate voir dire were not violated. Both the judge as well as counsel for both sides took great pains to ascertain whether the jury could fulfill its duty abide by the law and render an impartial verdict and sentence.

Accordingly, this claim is DENIED.

### VIII

Petitioner's eighth claim concerns two incidents during which the trial court allegedly prevented defense counsel from presenting exculpatory testimony. In reviewing both instances, the Court does not find that Petitioner's Sixth Amendment right to confront witnesses or present evidence was violated.

First, Petitioner asserts that the trial court violated his right to present witnesses when it barred defense counsel from presenting a witness to impeach the testimony of Michael Rock. Mr. Rock testified that he saw Petitioner shoot the victim. Defense counsel asked Mr. Rock in his cross examination whether Rock recalled "telling Detective Pisani that you couldn't see his face?" To which Rock replied, "Well I told him I couldn't see his whole face, but part. I only saw part of it, but I told him I didn't see his whole face." (R. 1994–95). Defense counsel then sought to impeach Mr. Rock by having Detective Pisani testify: "I asked [Rock] did he have a mustache and I said 'Do you know?' Rock responds, 'I really couldn't see his face 'cause he kind of held it down." The trial court barred this testimony pursuant to Florida Evidence Code § 90.614(2) because defense counsel had failed to lay a proper predicate for the introduction of impeachment testimony. (R. 2660–64).

Florida Evidence Code § 90.614(2) requires:

Extrinsic evidence of a prior inconsistent statement by a witness is inadmissible unless the witness is first afforded an opportunity to explain or deny the prior statement and the opposing party is afforded an opportunity to interrogate him on it ...

The Court agrees with the State that defense counsel could very easily have asked Rock if he had told Detective Pisani "I really couldn't see his face cause he held it down." Here, defense counsel did not fully and accurately quote the prior, allegedly inconsistent statement to the witness during cross examination and did not fulfill the

---

**14.** At the conclusion of the bench conference following the objection to the use of the term "mercy," the Court told the jury:

The bottom line is that you would follow the instructions of the law that will govern this case, and with that law and the evidence base your decision only on the law and the evidence.

In other words, is there anyone that would not follow the law in this case. I know the reservations that some of you have about the capital death penalty, and we're going to get into that, but with those reservations, is there anyone that would not follow the Florida law that governs this case and that you would be instructed by me as the judge in this case with the reservations of those individuals as to capital punishment?

(R. 1596–97).

prerequisite of the rule for subsequent presentation of the impeachment testimony. Moreover, the statement made by the witness during cross examination was not materially different from the earlier statement in the sense that the witness admitted that his view of the Petitioner's face was impaired.

■ Second, defense counsel sought to introduce exculpatory statements allegedly made by Willie Webb who lived next door to the place where the victim was shot. The statements were made to Dorothy Stokes. Webb is alleged to have said that he heard a scream and shots, then immediately saw Waterfield come around the corner in his truck, jump out and run into Webb's yard with a gun in his waistband. The trial court refused to let Ms. Stokes testify to Webb's statements on the basis that the statements did not qualify as an excited utterance exception to the hearsay rule. This was nothing more than an evidentiary ruling which was not clearly wrong, and the Court does not find any constitutional infirmity in that ruling.

Accordingly, this claim is DENIED.

## IX

■ In his ninth claim, Petitioner argues that his sentence must be overturned because the court allowed the State to introduce evidence of non-statutory aggravating factors at Petitioner's capital sentencing proceeding.

Four months prior to his conviction in this case, Petitioner had been serving a prison sentence for an earlier conviction of the offense of armed trespass. This conviction was based on Petitioner's entering into a woman's car and hiding in the back seat with a loaded .357 magnum and a pair of handcuffs. Petitioner's prior imprisonment was made known to the jury. However, the jury was not told the reason for that imprisonment. (R. 3070–3073). The trial court had previously ruled that armed trespass did not qualify as an aggravating circumstance.

The first reference to the trespass later arose when Petitioner's mother testified about Petitioner's character and his reli-gious conversion while he was in prison on the prior charge. This effectively "opened the door" and, on cross examination, the State questioned Petitioner's mother about the circumstances of the trespass since she had testified that Petitioner was "not capable of doing this" and that she had "never worried from day one until now" that her son would get into such trouble. Petitioner's mother admitted that he had been sent to prison for crouching in the back of a woman's car with a gun and handcuffs. (R. 3154–55). The State later referred to this incident in its closing argument when it questioned whether Petitioner's alleged religious conversion was sincere in light of his past behavior. (R. 3213).

Petitioner contends that the two references to the armed trespass unlawfully introduced the aggravating circumstance of a prior conviction of a felony involving the use or threat of violence. F.S.A. 921.-141(5)(b).

The references to the circumstances surrounding the armed trespass do not qualify as error, much less constitutional error. The State never argued that this prior incident constituted an aggravating circumstance. Rather, the prosecutor told the jury:

> I submit to you that was a response to a comment about the character of the defendant in this case. What happened after he got out of prison and had been born again the first time? [referring to the murder] Within four months—within four months after he had been born again in prison and got out, that's what happened.

> I submit to you that you can consider that in determining whether or not the defendant's character is an aspect in mitigation of the aggravating circumstances that have been proven here beyond a reasonable doubt.

R. 3215–16. Hence, the references to the circumstances of the trespass simply addressed the issue of Petitioner's character in rebuttal of his argument that he had undergone a religious conversion. Moreover, the jury was instructed that it could consider only five aggravating circum-

stances. Those five did not include a prior felony involving threat or use of violence.

Accordingly, this claim is DENIED.

### X

Petitioner's tenth claim is that he was deprived of a reliable and individualized sentencing procedure. Here, Petitioner argues that the judge imposed sentence after the jury's verdict without mentioning any statutory or nonstatutory mitigating circumstances, and that the trial court had not engaged in the required balancing process. Instead, Petitioner contends that the trial court sought after the fact to bolster its sentence by providing written findings which in part varied from the trial court's oral comments at sentencing.

Petitioner's claim is procedurally barred due to his failure to argue it on appeal. Petitioner has not demonstrated sufficient cause for his failure to raise the issue on appeal nor has he demonstrated any actual prejudice. Even if the claim were not barred, the trial court's action in sentencing the Petitioner and its later submission of written findings supporting that sentence does not raise a constitutional issue. It is clear that the trial court made a considered judgment in imposing the death penalty. The judge referred to the jury's 11–1 vote in favor of death, and identified several aggravating circumstances in imposing the sentence. Moreover, the basis of that sentence was thoroughly discussed and supported by specific findings which the Court later submitted as required by Florida statute § 921.141(3). Petitioner's allegation of prejudice and an unreliable sentence is without merit.

Accordingly, this claim is DENIED.

### XI

Petitioner's eleventh claim is that he was denied a reliable sentencing proceeding in violation of *Booth v. Maryland*, 482 U.S. 496, 107 S.Ct. 2529, 96 L.Ed.2d 440 (1987), and the Eighth and Fourteenth Amendments, when the state urged that he be sentenced to death on the basis of impermissible "victim impact" evidence. Petitioner asserts that, contrary to the rule established in *Booth*, both the jury and the judge may have considered inappropriate victim impact evidence in arriving at their decisions to recommend and impose, respectively, the death penalty.

*Booth* involved a Maryland statute which required that a presentence report containing a "victim impact statement" be considered in all felony cases. The statement was designed to detail the effect that the crime had on the victim and his or her family. The Supreme Court held that the presentation of such information to a capital sentencing jury violates the Eighth Amendment because it creates a constitutionally unacceptable risk that the jury might impose the death penalty in an arbitrary and capricious manner. *Id.* 107 S.Ct. at 2533.

The victim impact statement provided to the jury in *Booth* contained two types of information. It first described the personal characteristics of the victims and the emotional impact of the crimes on their family, and second, it set forth the family members' opinions and characterizations of the crimes and the defendant. *Id.* Included in the impact statement presented to the jury were family members' comments regarding the serious emotional problems they suffered as a result of the crimes, family members' perception of the crimes, including the victims' son's opinion that his parents had been "butchered like animals," and the family members' beliefs that the defendants could "never be rehabilitated." *Id.* at 2531.

In noting that "any decision to impose the death sentence must 'be, and appear to be, based on reason rather than caprice or emotion,'" *Id.* at 2536 *quoting Gardner v. Florida*, 430 U.S. 349, 97 S.Ct. 1197, 1204, 51 L.Ed.2d 393 (1977), the Court stated that there is no "justification for permitting such a decision to turn on the perception that the victim was a sterling member of the community rather than someone of questionable character." *Booth*, 107 S.Ct. at 2534. Thus, the Court vacated Booth's death sentence because it concluded that the family members' opinions and charac-

terizations of the crimes "can serve no other purpose than to inflame the jury and divert it from deciding the case on the relevant evidence concerning the crime and the defendant." *Id.* at 2536.

Upon review of the record in this case, the Court concludes that a material difference exists between the detailed victim impact statements presented to the jury in *Booth* and the references made to the victim's family here. In this case during voir dire examination of the venire, the prosecutor, in the context of stressing that sympathy cannot play a role in the jury's deliberations, made reference to the fact that although members of the Petitioner's family might testify during the penalty phase (if the Petitioner were ultimately convicted), the parents of the victim would not be permitted to testify. Additionally, at the sentencing phase the prosecutor, in response to the introduction of childhood photographs of the Petitioner, made passing reference to the fact that he could not introduce similar photographs of the victim. Unlike the situation in *Booth,* there were no comments from family members regarding either their emotional problems, their perceptions of the crime, their beliefs about the Petitioner, or the personal characteristics of the victim. Indeed, the prosecutor did not dwell on any impact the crime had on the victims or their families. His comments simply pointed out the self-evident fact that these teenage victims did have families in the context of arguing that sympathy for any party, victim or Petitioner, should not enter into the jury's consideration. The Court, therefore, concludes that the prosecutor's statements did not create the risk that the Petitioner's death sentence was based on considerations that are "constitutionally impermissible or totally irrelevant to the capital sentencing process." *Id.* at 2533 (citations omitted).

██ Petitioner also contends that the trial judge considered inappropriate victim impact evidence when imposing sentence. Petitioner points out that when the judge orally imposed sentence, he mentioned the suffering and torture felt by the surviving victim, Regan Martin. These comments were discussed in the context of the statutory aggravating circumstances that the murder was committed while the Petitioner was engaged in committing other felonies—kidnapping and sexual battery—and that the murder was especially heinous, atrocious and cruel. These comments by the judge clearly fail to offer any support for Petitioner's *Booth* claim.

Accordingly, this claim is DENIED.

## XII

██ Petitioner asserts that the trial court's instructions to the jury during the penalty phase of Petitioner's trial violated his constitutional rights by shifting the burden of proof from the State to him. The relevant instructions given by the trial court are as follows:

THE COURT: ... [I]t is your duty to follow the law that will now be given to you by the Court and to render to the Court an advisory sentence based upon your determination as to whether sufficient aggravating circumstances exist to justify the imposition of the death penalty and whether sufficient mitigating circumstances exist to outweigh any aggravating circumstances found to exist.

\* \* \* \* \* \*

Now, should you find sufficient aggravating circumstances do exist, it will then be your duty to determine whether mitigating circumstances exist that outweigh the aggravating circumstances.

\* \* \* \* \* \*

Now, if one or more aggravating circumstances are established, you should consider all the evidence tending to establish one or more mitigating circumstances and give that evidence such weight as you feel it should receive in reaching your conclusion as to the sentence that should be imposed.

Now, a mitigating circumstance need not be proved beyond a reasonable doubt by the defendant. If you are reasonably convinced that a mitigating circumstance exists, you may consider it as established.

Now, the sentence that you recommend to the Court must be based upon the facts as you find them from the evidence and the law. You should weigh the aggravating circumstances against the mitigating circumstances, and your advisory sentence must be based on these considerations.

(R. 3231-34).

Petitioner contends that these instructions impermissibly shifted the burden of proof to him in violation of *Mullaney v. Wilbur*, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975) and violated his due process and Eighth Amendment rights to a fundamentally fair and reliable sentencing determination.

Petitioner's claim is without merit. The United States Supreme Court has previously declared Florida's capital sentencing procedure, including its weighing of aggravating and mitigating circumstances, to be constitutional on its face. *Id.* As the Supreme Court stated:

> The directions given to judge and jury by the Florida statute are sufficiently clear and precise to enable the various aggravating circumstances to be weighed against mitigating ones. As a result, the trial court's sentencing discretion is guided and channeled by a system that focuses on the circumstances of each individual homicide and individual defendant in deciding whether the death penalty is to be imposed.

*Proffitt v. Florida*, 428 U.S. 242, 96 S.Ct. 2960, 2969, 49 L.Ed.2d 913 (1976). The instructions given by the trial court in this case track the language of the statute found facially constitutional in *Proffitt*. The statute as applied by the trial court in its instructions thus did not violate Petitioner's due process rights; and more specifically, did not shift the burden of proof to him.

Accordingly, this claim is DENIED.

## XIII

Petitioner asserts that he was denied effective assistance of counsel at trial in violation of the Sixth and Fourteenth Amendments.

The Sixth and Fourteenth Amendments to the Constitution guarantee a criminal defendant the right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). The basic standard for judging a claim that an attorney has not provided constitutionally adequate assistance is "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* Accordingly, a petitioner seeking relief on a claim of ineffective assistance, such as the one presented here, has the burden of showing (1) that his counsel's performance was deficient, and (2) that the deficient performance prejudiced the defense. *Id.* Each of these requirements was explained further in *Strickland v. Washington* to involve the following considerations.

The criterion for evaluation of attorney performance is that of *reasonably effective assistance*. The standard of reasonableness is an objective one which may be measured by using prevailing professional norms as guidelines; however, a court must be highly deferential when evaluating the performance of defense counsel and "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* 104 S.Ct. at 2065-66. Every effort should be made "to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 2065. Indeed, "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Id.* at 2066. Further, the Court of Appeals has reiterated that effective assistance does not mean errorless assistance, and that an attorney's performance is to be judged on the totality of circumstances in the entire record rather than on specific actions. *Green v. Zant*, 738 F.2d 1529, 1536 (11th

Cir.), *cert. denied* 469 U.S. 1098, 105 S.Ct. 607, 83 L.Ed.2d 716 (1984).

■ Even if defense counsel's performance was deficient, a petitioner asserting a claim of ineffective assistance must show that the deficiencies were prejudicial to his defense. This requires "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 104 S.Ct. at 2068.

■ In this case, Petitioner asserts that his trial counsel rendered ineffective assistance because he failed to present evidence concerning, and to request an instruction on, the issue of Petitioner's voluntary intoxication which, if proven to the jury, would have negated the specific intent necessary to convict Petitioner of the crimes with which he was charged. At the Petitioner's Rule 3.850 hearing in state court Mr. Kendall Phillips, Petitioner's trial counsel, testified that he and co-counsel James Long investigated and considered presenting a defense based on Petitioner's intoxication but ultimately rejected pursuing such a strategy. (EH 658, 661, 668). Mr. Phillips testified that the intoxication defense was rejected both because it was factually very weak and because he thought it would be inconsistent with Petitioner's main defense, factual innocence based on misidentification.[15] Mr. Phillips stated that he thought he would lose credibility with the jury if he were to present both defenses. (EH 658).

Upon review of the record the Court cannot say that by failing to pursue an intoxication defense, counsel's performance fell outside the range of professionally competent assistance. As counsel pointed out during his testimony, the intoxication defense was weak as there was no direct evidence that Petitioner had been drinking or using drugs on the day of the offense.[16]

To be sure, as discussed with respect to claim I, there was some circumstantial evidence—the bottle of vodka, the opened bottle of pills and family members' impressions—that would lend credence to an intoxication theory. However, there was also evidence from law enforcement personnel that after his arrest the Petitioner did not appear to be under the influence of either alcohol or drugs. (R. 2504, Testimony of Detective Sidney DuBose). Additionally, although Petitioner is correct that the misidentification and intoxication defenses are not strictly inconsistent, counsel's belief that he would lose credibility with the jury if he were to argue both that his client was innocent but that, if he were guilty, his guilt should be at least partially excused, is not unreasonable and his strategic choice not to pursue both defenses does not render his assistance ineffective.

Further, even if the Court concluded that competent counsel would have pursued an intoxication defense, the Petitioner's claim of ineffective assistance would still be unavailing because he has failed to demonstrate that there is a reasonable probability that assertion of the defense would have changed the outcome of the case. *See Strickland*, 104 S.Ct. at 2068; *Harich v. Dugger*, 844 F.2d 1464, 1471 (11th Cir. 1988). Not only was there no direct evidence of intoxication but the circumstantial evidence was not extremely strong and the inference of intoxication Petitioner hoped to draw from it was disputed by the observations of law enforcement personnel. Further, as described by Regan Martin, the surviving victim, the Petitioner's course of conduct over the hours the kidnappings, sexual assaults and murder took place disclosed that he directed the commission of the offenses. This testimony would have directly contradicted Petitioner's claim that he was so intoxicated that he was unable to form the specific intent necessary to be

---

15. Mr. Long gave similar testimony at the state Rule 3.850 hearing, stating that counsel had spent many hours talking with Petitioner's family about his history and that counsel rejected presenting an intoxication defense because they believed the identity defense was stronger. (EH 567, 601).

16. Petitioner did not testify at either the guilt phase or the sentencing phase and no allegation is made that the decision to keep him off the witness stand was erroneous or constituted ineffective assistance of counsel and, from the record, no such claim could be sustained.

found guilty of the crimes charged. Petitioner, therefore, has failed to meet his burden of demonstrating that he was constitutionally prejudiced by counsel's failure to pursue an intoxication defense.

Accordingly, this claim is DENIED.

## XIV

 Petitioner asserts that he was deprived of his due process rights, his right to a fair trial and his right to confrontation in violation of the Sixth, Eighth and Fourteenth Amendments due to the State's failure to comply with state discovery rules. Petitioner alleges that the State failed to comply with state discovery rule 3.220(a)(1)(vi), Fla.R.Crim.P., because it did not list the fact that three rounds of ammunition were found in Petitioner's pants pocket. Petitioner claims that this omission prejudiced him when the State improperly introduced the ammunition into evidence over his objection.

 This claim is without merit. An alleged violation of state law is cognizable in a § 2254 petition only if some federal right has also been impinged. Petitioner has shown no such federal right was violated in this case. Petitioner had been given notice of the presence of the ammunition well prior to trial because its existence was noted during the deposition testimony of Mr. Daniel Nippes, criminalist with the regional crime laboratory. (R. 2467–68). Additionally, the evidence was available for inspection by counsel for some time prior to trial. (R. 2472). The Court, therefore, cannot say that Petitioner's due process rights, his right to a fair trial or his right to confrontation were compromised by the State's failure to list the ammunition as may be required by state rules.

Accordingly, this claim is DENIED.

## XV

 Petitioner's fifteenth claim for relief is predicated upon *Caldwell v. Mississippi*, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985), in which the Supreme Court held that it is constitutionally impermissible under the Eighth and Fourteenth Amendments for a state to rest a death sentence on a determination made by a sentencing jury which has been led to believe that ultimate responsibility for determining the appropriateness of the defendant's death rested elsewhere. As this claim was not raised at trial or on direct appeal, it is procedurally barred. The Court can review the merits of the *Caldwell* claim only if the Petitioner can demonstrate sufficient cause and prejudice to excuse his failure to raise this issue on appeal. *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). Petitioner is foreclosed from showing the requisite "cause," however, by the Supreme Court's recent decision in *Dugger v. Adams*, 489 U.S. 401, 109 S.Ct. 1211, 103 L.Ed.2d 435 (1989). *Adams* held that the Court's intervening decision in *Caldwell* does not provide cause to a Florida defendant for a procedural default because the claims could have been raised during trial under then-existing state law. As the Supreme Court explained in *Adams:*

> [W]hat is determinative in this case is that the ground for challenging the trial judge's instructions—that they were objectionable under state law—was a necessary element of the subsequently available *Caldwell* claim. In such a case, the subsequently available federal claim does not excuse the procedural default.

*Id.,* at 402, 109 S.Ct. at 1212. Petitioner's *Caldwell* claim is thus procedurally defaulted and the default is not excused under the cause and prejudice standard set out in *Sykes.*

Accordingly, this claim is DENIED.

## XVI

 Petitioner contends that his death sentence rests upon an unconstitutional automatic aggravating circumstance, in violation of *Lowenfield v. Phelps*, 484 U.S. 231, 108 S.Ct. 546, 98 L.Ed.2d 568 (1988), and the Eighth and Fourteenth Amendments. More particularly, the Petitioner contends that it is unclear from the general verdict form whether the conviction was for killing with a premeditated design pursuant to Fla.Stat. § 782.04(1)(a)1 or pursuant to the

felony murder provision at Fla.Stat. § 782.04(1)(a)2. The Petitioner argues that if the jury rendered a verdict of guilty of murder in the first degree on the basis of the felony murder statute, then a finding of the aggravating factor set forth in Fla. Stat. § 921.141(5)(d) (that the crime for which the defendant is be sentenced was committed while the defendant was engaged in the commission of, *inter alia,* sexual battery or kidnapping) was "automatic" at the penalty phase in violation of *Lowenfield.* This argument is without merit.

In *Lowenfield,* the petitioner was found guilty of three counts of first degree murder pursuant to a Louisiana statute which defined the crime as occurring when: "[T]he offender has a specific intent to kill or to inflict great bodily harm upon more than one person." *Id.* 108 S.Ct. at 554 *quoting* La.Rev.Stat.Ann. § 14:30.A(3). The only aggravating factor found by the jury was that "the offender knowingly created a risk of death or great bodily harm to more than one person." *Id. quoting* La. Code Crim.Proc.Ann. Art. 905.4(d). Petitioner contended that his death sentence violated the Eighth Amendment because the sole aggravating factor found merely duplicated an element of the underlying offense of which he was convicted. *Id.* at 548.

In rejecting the petitioner's contention the Supreme Court held that the parallel nature of the aggravating circumstance did not render the sentence infirm because the constitutionally mandated narrowing of the class of death-eligible persons was performed at the guilt phase under Louisiana's statutory scheme. The Constitution, therefore, did not require an additional aggravating circumstance to be found at the penalty phase to channel the jury's discretion. *Id.* at 554.

In Florida, unlike Louisiana, the required narrowing of death-eligible persons occurs during the sentencing phase through the weighing of aggravating and mitigating factors. Here, in the Order entered August 20, 1984, the trial judge specifically found the existence of five statutory aggravating circumstances and that no mitigating circumstances existed. (R. 854A–G, Order of Judge L.B. Vocelle, August 20, 1984). On appeal, the Florida Supreme Court rejected all of Petitioner's challenges to his sentence, including numerous challenges to individual aggravating circumstances, and held that the death penalty was proportionately warranted in this case. *Gore v. State,* 475 So.2d 1205, 1211 (Fla. 1985).

Based on the fact that the trial court found four aggravating circumstances independent of that claimed to be "automatic" by Petitioner, and the Court's own review of the record, there is no question that the penalty phase of this trial "genuinely narrow[ed] the class of persons eligible for the death penalty and ... reasonably justif[ied] the imposition of a more severe sentence on the defendant as compared to others found guilty of murder." *Zant v. Stephens,* 462 U.S. 862, 103 S.Ct. 2733, 2742, 77 L.Ed.2d 235 (1983). *Lowenfield v. Phelps* adds nothing to the Petitioner's argument and simply does not support it.

Accordingly, this claim for relief is DENIED.

## XVII

■ In his final claim Petitioner contends that he was denied the due process guarantees of an impartial jury and a verdict based solely on the evidence adduced at trial in violation of the Sixth, Eighth and Fourteenth Amendments due to an outburst by an epileptic juror which interrupted defense counsel's closing argument. At the time, defense counsel reported to the trial judge that he had heard the juror laughingly exclaim during his seizure "goddamn you" two or three times. (R. 2856–7). After taking a brief recess during which the trial judge denied Petitioner's motion for a mistrial, the epileptic juror was excused and an alternate juror seated in his place. The judge then gave the following explanatory and curative instruction:

THE COURT: Ladies and gentlemen of the jury, we are concerned about Mr.

Brown's health. Under the circumstances I am excusing Mr. Brown so that he can go about his own personal affairs and I believe we do have someone in attendance with him.

\* \* \* \* \* \*

Ladies and gentlemen, any outburst that Mr. Brown made or may not have made—I did not hear—but I want to state to you, as I've stated to you from the very beginning, this case must be tried solely on the evidence and on the law and nothing else.

\* \* \* \* \* \*

Can each of you assure me that you will make your decision in this case solely on the law and nothing else?

Is there anything that Mr. Brown has stated that would in any way influence this jury and carry any comments he may or may not have said into the jury room?

All right. We're sorry for the interruption of the defense's argument. Mr. Phillips, you may proceed.

(R. 2864–66).

Upon review of the record, the Court concludes that the brief and unfortunate outburst by the epileptic juror in the throes of a seizure did not undermine "the fundamental integrity of all that is embraced in the constitutional concept of trial by jury." *Turner v. Louisiana*, 379 U.S. 466, 85 S.Ct. 546, 549, 13 L.Ed.2d 424 (1965). The juror was excused and any potential confusion felt by the jury after the juror's outburst was adequately remedied by the curative instruction given by the trial court immediately following the brief recess which had been taken in order to give the affected juror medical assistance.

Accordingly, this claim for relief is DENIED.

Upon due consideration, the Court has concluded that Petitioner's first claim for relief, the claim based on *Lockett v. Ohio* and *Hitchcock v. Dugger* is meritorious and that Petitioner has demonstrated that his death sentence was imposed in violation of the Eighth Amendment of the Constitution of the United States.

The petition for a writ of habeas corpus is GRANTED. Unless the State within 120 days resentences the Petitioner in a proceeding that comports with *Lockett* and *Hitchcock*, the Petitioner shall be resentenced to an appropriate sentence less than death. With respect to all other claims, the petition is without merit and is denied.

A number of motions remain for the Court's consideration. Petitioner's motion for leave to proceed *in forma pauperis* is GRANTED. The motion for an extension of the Court's page limitation is GRANTED. The several motions to admit counsel *pro hac vice* are GRANTED.

The Clerk is directed to enter judgment in favor of Petitioner consistent with this memorandum opinion.

IT IS SO ORDERED.

DONE and ORDERED.